IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| WALLER MARINE, INC. | § | Case No. 17-34230 |
| | § | |
| DAVID BRICE WALLER | § | Case No. 17-34047 |
| | § | (Joint Administration Requested) |
| | § | |
| Debtors. | § | Chapter 11 |

DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
(I) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO
SECTION 363(C) OF THE BANKRUPTCY CODE;
(II) GRANTING ADEQUATE PROTECTION FOR THE USE THEREOF;
AND (III) SCHEDULING A FINAL HEARING PURSUANT TO
<u>BANKRUPTCY RULE 4001 AS TO USE OF CASH COLLATERAL</u>

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

EMERGENCY RELIEF HAS BEEN REQUESTED, IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER, IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

<u>THERE WILL BE A HEARING ON THIS MOTION ON THURSDAY, JULY 13, 2017, AT 10:30 a.m. IN COURTROOM 400, 515 RUSK, HOUSTON, TX 77002.</u>

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Waller Marine, Inc. ("WMI") and David Brice Waller ("Waller") (collectively the "Debtors") hereby file this emergency motion (the "Motion"), for interim and final orders (i) authorizing use of cash collateral of existing secured lenders pursuant to Section 363(c) of the Bankruptcy Code, (ii) granting adequate protection for the use thereof, and (iii) scheduling a final hearing pursuant to Bankruptcy Rule 4001 as to use of cash collateral. In support thereof, the Debtors state as follows:

## I.      JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested in this Motion are Bankruptcy Code §§ 105, 361, 362, and 363 and Bankruptcy Rules 2002, 4001, and 9014.

## II.     BACKGROUND

**Procedural Background:**

2.      Waller Marine, Inc. is a Texas corporation incorporated in 1974 and domiciled in Houston since its inception. The company is solely owned by David Waller, who is a Naval Architect with over 50 years in the marine industry. Waller filed a voluntary petition for chapter 11 bankruptcy on June 30, 2017. On July 7, 2017, WMI filed its voluntary petition for chapter 11 with a complex case designation. Due to the timing of the bankruptcy filings, WMI and Waller were assigned different bankruptcy judges. On July 10, 2017 WMI and Mr. Waller filed motions for joint administration in their respective cases and requested that Mr. Waller's case be transferred to the same court as WMI's case. Those motions are still pending.

**DEBTOR'S EMERGENCY MOTION FOR AUTHORIZATION TO USE CASH COLLATERAL**—Page 2

**Debtor's Business Overview:**

3. WMI's business is largely in the marine industry, providing Naval Architectural & Marine Engineering services initially to the offshore Oil & Gas industry, with engineering support, new designs, surveys and construction supervision and occasionally full EPC contracting. WMI includes in its client list most of the large international offshore drilling, production, construction and support service companies both past and present. Additionally, WMI provides similar support to the shipping industry, such as Shell, Exxon and CITGO.

4. In later years, WMI has developed a series of unique designs in the offshore gas industry, being the first company to obtain approval for floating liquefaction (FLNG) and floating gas to methanol facilities. The company has also designed a series of vessels for small scale liquefied natural gas distribution and ship bunkering in US waters; the first such vessel will be ordered by a client before the end of this year under a licensing agreement for ten such units at $350,000.00 each. A different design is presently being prepared for another company at this time.

5. The company's unique marine designs caught the attention of Enron in 2000 that contracted WMI to design and construct two floating power generation facilities for installation in Nigeria. This successful early experience led to the development and construction of what are today the world's largest capacity floating power plants, with a 250 MW plant in India and a 340 MW facility installed in Venezuela. This project represents the largest industrial gas turbine to be installed on a floating facility. Both GE and Siemens have recently contracted with WMI for power barge designs incorporating their gas turbines and WMI is about to enter into a consortium agreement with GE to replace the 900 MW of floating power that presently serves New York City.

6. While WMI occasionally implements large EPC projects for floating power, the Venezuela project for instance being a $350 million contract, the Company's bread and butter revenues have for years been derived from the offshore oil & gas industry. Unfortunately this market has gradually dried up over the past 2 years, reducing cash flow to zero today creating both a capital and revenue shortfall that has led to the company's inability to pay its financial obligations. Fortunately the company has now fully diversified and is beginning to contract for new work in the areas of small scale LNG distribution and bunkering systems and large floating power generation facilities. It is projects such as this that will allow the company to pay its obligations in the future.

**Secured Claim of Mr. Gelman:**

7. Jonathan Gelman sued WMI in Harris County District Court on account of a promissory note issued by a joint venture in which WMI was a party. Gelman succeeded in his litigation and obtained a judgment against WMI and Mr. Waller in the amount of $575,000 plus interest. On March 31, 2017, the parties entered into an Irrevocable Agreed Order for Turnover Relief and Post-Judgment Injunction in the Harris County District Court. Part of the agreement was that WMI convey to Gelman a security interest in all accounts, receivables, contract rights, and proceeds thereof, now owned or hereafter acquired. On March 31, 2017, Gelman filed a UCC-1 to perfect his security interest.

### III.   RELIEF REQUESTED

8. Pursuant to Bankruptcy Rule 4001(b), the following summarizes the material terms of the Interim Order. The Debtor seeks authority to use the Cash Collateral (as defined below) of Gelman. The Debtor seeks to use such Cash Collateral as working capital in the operation of their business for the purposes specified in, and at least for the period defined in, the

attached budget. As adequate protection for the diminution in value of Cash Collateral, the Debtor will (i) provide superpriority administrative claims to the extent of any diminution in value of Cash Collateral; (ii) maintain the value of their business as a going-concern; and, (iii) provide replacement liens upon now owned and after-acquired cash to the extent of any diminution in value of Cash Collateral.

9. As a consequence of the prepetition security interest granted to Gelman described above, certain cash in the Debtor's possession or in which the Debtor has an interest, on and after the Petition Date, constitutes asserted cash collateral ("Cash Collateral") in which Gelman may assert an interest within the meaning of § 363(a) of the Bankruptcy Code. By this Motion, pursuant to Bankruptcy Code §§ 105, 361, 362, and 363 and Bankruptcy Rules 2002, 4001, and 9014, the Debtor requests that the Court enter an order (i) approving the Debtor's use of Cash Collateral, (ii) providing adequate protection for, and to the extent of, any diminution in the value of the Cash Collateral, and (iii) scheduling a final hearing (the "Final Hearing") for this Court to consider entry of a final order (the "Final Order") authorizing and approving the relief requested in this Motion.

## IV.   BASIS FOR RELIEF

10. Under 11 U.S.C. § 363(c)(2), a debtor may use cash collateral if each entity that has an interest in such cash collateral consents or if the Court, after notice and a hearing, authorizes the use of the cash collateral. Pursuant to 11 U.S.C. § 363(c)(3), the Court must condition a debtor's use of cash collateral as is necessary to provide adequate protection of the interest in the cash collateral claimed by a party.

11. Bankruptcy Rule 4001(b) and (d) govern the procedure for consideration of motions to use cash collateral, and both of these subsections provide for expedited consideration

of such motions for cases in which immediate interim relief may be crucial to the success of a reorganization.

12. At a hearing on a debtor's motion for the use of cash collateral, the debtor bears the burden of proof on the issue of adequate protection, and the party claiming an interest in the cash collateral bears the burden of proof on the issue of the validity, priority, or extent of the lien.

**A.    Failure to Obtain the Immediate Interim Use of Cash Collateral Would Cause Immediate and Irreparable Harm.**

13. As of the Petition Date, the Debtor does not have unencumbered cash sufficient to fund their business operations and pay present operating expenses.  Specifically, the Debtor lacks sufficient cash to fund payroll necessary to maintaining current staffing levels necessary to operate the Debtor's business, as well as pay for the various business insurance.  Therefore, the Debtor has an urgent need for the immediate use of Cash Collateral pending a final hearing on this Motion.

14. Accordingly, the Debtor faces "immediate and irreparable harm to the estate" absent the emergency consideration of the relief requested in this motion.  The immediate use is necessary, and it will stabilize the Debtor's operations and revenue by allowing the Debtor to maintain staffing levels sufficient to operate the Debtor's business.  Without authority to use Cash Collateral, the Debtor will not be able to function as a going concern and will not be able to proceed to consideration of a plan of reorganization.  Accordingly, authority to use Cash Collateral is necessary to avoid the shutdown of the Debtor's business, and will be in the best interests of the Debtor, its estate and creditors.

**B.    The Proposed Adequate Protection is Sufficient.**

15. Through this Motion, the Debtor intends to provide adequate protection, to the extent of the aggregate diminution in value of Cash Collateral from and after the Petition Date, to Gelman for the use of the Cash Collateral by:

   a. providing superpriority administrative claims to the extent of any diminution in value of Cash Collateral

   b. maintaining the going concern value of Gelman's collateral by using the Cash Collateral to continue to operate the business and administer these cases; and

   c. providing to Gelman a postpetition replacement lien pursuant to 11 U.S.C. § 361(2) in the accounts receivable of the Debtor, including cash generated or received by such Debtor subsequent to the Petition Date, but only to the extent that Gelman had valid, perfected prepetition liens and security interests in such collateral as of the Petition Date.  The priority of any postpetition replacement liens granted to Gelman shall be the same as existed as of the Petition Date.

16. The continuation of the Debtor's operations presents the best opportunity for the Gelman to receive the greatest recovery on account of his claim.  Accordingly, the Debtor submits that use of the Cash Collateral will allow the Debtor to continue its operations and thereby protect the Gelman's interests.  Courts have consistently recognized that the preservation of the going concern value of secured creditor's collateral constitutes adequate protection of such creditor's interest in the collateral. *See, e.g., In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716 (Bankr. D. Del. 1996) (holding that if there is no actual diminution of value of collateral and the debtor can operate profitably postpetition, then the secured creditor is adequately protected);

*In re 499 W. Warren St. Assocs., Ltd. P'ship,* 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992) (finding a secured creditor's interest in collateral adequately protected when cash collateral was applied to normal operating and maintenance expenditures on the collateral property); *In re Willowood E. Apartments of Indianapolis II, Ltd.*, 114 B.R. 138, 143 (Bankr. S.D. Ohio 1990) (same); *In re Stein,* 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982) (creditors' secured position would be enhanced by the continued operation of the debtors' business); *In re Aqua Assocs.*, 124 B.R. 192, 196 (Bankr. E.D. Pa. 1991) ("The important question, in determining whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized.") (citation omitted).

17. Additionally, through this Motion, the Debtor intends to provide further adequate protection, to the extent of any diminution in value, to Gelman for the use of the Cash Collateral by providing to Gelman postpetition replacement liens pursuant to 11 U.S.C. § 361(2) in accounts receivable, including cash generated or received by the Debtor subsequent to the Petition Date, but only to the extent that Gelman had valid, perfected prepetition liens and security interests in such collateral as of the Petition Date. The priority of any postpetition replacement liens granted to Gelman shall be the same as existed as of the Petition Date.

### V. REQUEST FOR INTERIM RELIEF

18. An immediate need exists for the Debtor to obtain approval of the use of Cash Collateral in order to meet key expenses as described above and as identified in the interim budget ("Interim Budget") attached hereto as Exhibit A.[1] Without the immediate use of the Cash Collateral for an interim period, the Debtor will essentially be forced to terminate existing staff

---

[1] Exhibit A shows the Debtors' estimated revenue and expenses for a 13 week period. As an interim matters, the Debtors only seek use of Cash Collateral as shown on Exhibit A during the weeks up to the week in which the Court schedules the Final Hearing. The Debtors reserve the right to amend the budget prior to the Final Hearing.

and cease operations.  Obviously this would have a severe negative impact upon the Debtor's going concern value and ability to successfully create value for all creditors.  The Debtor's business, as a going concern, has a value far in excess of any value that might be obtained in a chapter 7 liquidation.  Accordingly, it is imperative that a preliminary hearing be set immediately.

19. Pursuant to Bankruptcy Rule 4001, the Debtor requests that the Court set a preliminary hearing on the use of Cash Collateral, and that at such preliminary hearing, the Court authorize the temporary use of Cash Collateral consistent with the Interim Budget, in order to avoid immediate and irreparable harm to these bankruptcy estates pending a final hearing.

### VI.     REQUEST FOR FINAL HEARING

20. Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtor also requests that the Court set a date for a final hearing that is as soon as practicable and fix the time and date prior to the Final Hearing for parties to file objections to this Motion

### VII.     NOTICE

21. No trustee, examiner or creditors' committee has been appointed in this chapter 11 case.  Notice of this Motion will be provided to: (i) the Office of the United States Trustee; (ii) the holders of the 20 largest unsecured claims against the Debtor; (iii) the Debtor's secured creditors; and, (iv) the Internal Revenue Service.  Due to the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtor respectfully submits that no further notice of this Motion is required.

### VIII.     BASIS FOR EMERGENCY RELIEF

22. An emergency exists because the Debtor faces immediate and irreparable harm to the estate absent the emergency consideration of the relief requested in this motion.  The

immediate use is necessary, and it will stabilize the Debtor's operations and revenue by paying ordinary, postpetition operating expenses, as well as any court approved prepetition expenses that may be at issue. As a result, if an emergency hearing is not set, the Debtor will be unable to operate.

WHEREFORE, each of the Debtor respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Respectfully submitted on the 11th day of July, 2017.

**OKIN ADAMS LLP**

By: ___/s/ Christopher Adams___
Christopher Adams
Texas Bar No. 24009857
David L. Curry, Jr.
Texas Bar No. 24065107
1113 Vine St., Suite 201
Houston, Texas 77002
Tel: 713.228.4100
Fax: 888.865.2118
cadams@okinadams.com
dcurry@okinadams.com

**PROPOSED ATTORNEYS FOR WALLER MARINE, INC.**