

**Tiderock Development, LLC**
25 Schilling Road
Hunt Valley, MD 21031
Tel: (443) 506-9158
Email: tfore@soradevelopment.com

**STRICTLY PRIVATE AND CONFIDENTIAL VIA EMAIL**

September 30, 2018

David Waller
President & Sole Shareholder
Waller Marine, Inc.
14420 W. Sylvanfield Drive
Houston, Texas 77014

VIA: Email

Dear David,

*We continue to be impressed by Waller Marine, Inc.'s positioning in the market and its growth prospects in the floating power plant and liquidified natural gas (LNG) markets. As such, we are enthusiastic about partnering with management to restructure and grow a company with strong strategic positioning in its industries. We believe that our team for this opportunity, which includes leading infrastructure and energy executives, can add significant value in expanding Waller Marine, Inc.'s operations.*

Tiderock Development, LLC ("Tiderock") and its investors or its assignee are pleased to submit this non-binding Letter of Intent (the "Letter of Intent," or "LOI") to acquire (i) forty-nine percent (49%) of the capital stock (the "Shares") of Waller Marine, Inc. ("Waller" or the "Company") from its Principal Shareholder ("Owner"). This LOI is based upon confidential information related to the Company's current operations and financial performance provided to us by the Owner and his advisor, together with initial responses to due diligence questions by the Owner and due diligence conducted by Tiderock through the date of this Letter of Intent. Waller is currently operating under the protection of Chapter 11, case # 17-34230 in the United States Bankruptcy Court for the South District of Texas (the Court)

This proposal is subject to the completion of a due dilligence review of Waller satisfactory solely to Tiderock, the negotiation of a stock purchase agreement (the Purchase Agreement) with terms and conditions satisfactory to Waller and Tiderock, and the submission of a plan of reorganization (the Plan). We would request that you request a time frame of not to exceed 60 daysfrom the bankruptcy judge enabling Tiderock sufficient time to complete the due diligence process, complete negotiation of the Purchase Agreement and to create and submit the Plan to the Court for its review. This LOl does not contain all matters upon which agreement must be reached in order for the acquisition to be consummated and creates no binding rights or obligations other than as listed in sections 5, 7, and 8 of this LOI.

The principal terms and conditions of our LOI are as follows:

1. Purchase Price: Based on our review of the information to date, Tiderock is pleased to develop a purchase price to cover all the necessary funds to the bankruptcy court to exit Chapter 1 1  (the "Purchase Price") for the 49% of the Owner's Shares. The Purchase Price is based upon the following key assumptions:
    a. Payment in full to Secured creditors of approximately - $11,000.
    b. Administrative costs, legal and other of approximately - $305,000.




[Type text]                                                                                                                                                  [Type text]

  c. Unsecured creditors: amount to be determined upon review – subject to compromise

2. **Due Diligence and Timing:** Tiderock has already committed key resources to the completion of a proposed transaction with the Owner – this includes engaging key industry experts to review the Company and the market viability and Riemer and Braunstein, Tiderock's bankruptcy counsel; William Gardner, Senior Turnaround/Restructuring executive. *(Appendix A)* Tiderock is prepared to commit additional resources necessary to complete due diligence and execute a definitive Purchase Agreement on an expedited basis of not more than sixty (60) days. Key due diligence items include a review of contracts and supply agreements, third party customer checks, a detailed financial, accounting and tax review, and confirmatory legal, insurance, HR and environmental due diligence.

   In addition, Tiderock must further evaluate and finalize a plan for each of the following outstanding Waller matters:

   1) Settlement of the Diversity Max Lawsuit;
   2) Finalization of the purchase or right to purchase the Gelman Judgment from Sampson Energy; and
   3) Finalization of the refinancing of the mortgage secured by a building located at 14420 W. Sylvanfield Drive, Houston, Texas 77014, owned by David Brice & Irene Joyce Waller Revocable Living Trust

3. **Closing Date:** Tiderock expects to complete its due diligence investigation and negotiate a mutually satisfactory Purchase Agreement within sixty (60) days of the execution of this LOI..

4. **Considerations and Approvals:** All necessary government and regulatory approvals shall be obtained prior to Tiderock entering into a binding Purchase Agreement with the Company. Based on the level of due diligence performed thus far, we believe there are no third party approvals needed in order to deploy our capital and we do not anticipate that any financing would require time consuming approval processes such as shareholder votes.

5. **Exclusivity:** The exclusivity period will be thirty (30) days from the execution and approval of the Purchase Agreement (the Exclusivity Period). During the Exclusivity Period, (i) neither the Company, the Owner nor any representatives will, directly or indirectly, through any representative or otherwise, solicit or entertain offers from, negotiate with or in any manner encourage, discuss, accept, or consider any proposal of any other person relating to the acquisition of any membership interest or other ownership interest of the Company or any of its subsidiaries, or any of their assets or businesses, in whole or in part, whether directly or indirectly, through purchase, merger, consolidation, or otherwise; and (ii) the Company, as the case may be, will immediately notify Tiderock in writing, of any contact (whether by telephone, personal conversation, fax, e-mail or otherwise) between the Company, the Owner or their respective representatives and any other person regarding any offer or proposal of the nature specified in subparagraph (i) of this Paragraph.

6. **Letter of Intent:** It is understood and agreed that this LOI does not contain all matters upon which agreement must be reached in order for the proposed acquisition to be consummated and creates no binding rights or obligations in favor of either party. It is further understood that, unless and until a definitive agreement is entered into between the parties with respect to the proposed acquisition, no party will be under any legal obligation of any kind whatsoever by virtue of this LOI or any oral expression other than as listed in sections 5, 7, and 8 of this LOI.

7. **Confidentiality:** This LOI, its terms and the existence and content of any discussions relating to any proposal or any transaction between the respective parties are confidential, provided that the Company and the Owner shall be permitted to share this letter and disclose the terms and the existence and content of any discussion relating to the LOI with directors, officers, employees, agents, counsel, advisors, the Court and other parties as maybe directed by the Court.

8. **Expenses:** Each party to this LOI shall be responsible for its own fees and expenses incurred in connection with the preparation and negotiation of this transaction and the documents related thereto, including the fees




[Type text]                                                                                                                    [Type text]

and disbursements of its respective counsel, advisors, finders, investment bankers, accountants or other experts.

9. <u>Governing Law:</u> This LOI will be governed by and construed in accordance with the internal laws of the Delaware.

10. <u>Contact Information:</u>   Please contact me at (443) 506-9158 for purpose of this LOI and future communications.

Our investment philosophy is predicated on developing partnerships with management. We also strive to identify and acquire businesses that offer differentiated and defensible products and services, demonstrate attractive growth characteristics supported by sustainable industry fundamentals, generate attractive returns on capital deployed, and are led by management teams with clear, executable visions for their business. We believe that Waller has these characteristics. Accordingly, we are enthusiastic about discussing how we can partner with the Owner and the management team to create a world-class company and drive value creation.

We believe our strategic relationships with other operators in the infrastructure and energy sectors uniquely qualify us as partners to grow the Company. We are excited about our ability to be additive to the Company and build out its operations. In closing, Tiderock hopes this proposal effectively communicates both its seriousness and level of interest in moving forward with this transaction.

Very truly yours,

*[signature]*

Thomas Fore
Managing Member
Tiderock Development


Agreed and Accepted to this 3<u>rd</u> day of September 2018

WALLER MARINE, INC.

By: _____*[signature]*_____
Name:  David Waller
Title:    President and Sole Shareholder


CC: William Gardner, Hank Torbert, Alan Braunstein, Esq. and Chris Adams, Esq.

3

[Type text] [Type text]

## APPENDIX A:

*Tiderock has engaged the following to support the proposed Waller Marine transaction:*

**Senior Turnaround / Restructuring Executive: William Gardner**

With over 30 years of restructuring experience, Mr. Gardner is a Senior Level Executive demonstrating success in leadership, managing relationships, customer service, goal achievement, operational proficiency and integrity. I am accustomed to and effective in high-profile executive roles, making high-stakes decisions

Mr. Gardner has acted as a Financial Advisor/Management consultant and Turnaround consultant in capacities i.e. CEO, CFO, Court Appointed Trustee, et al primarily for GE Capital debt customers for various divisions who were in default, i.e. GE Bank Loan Group, GE Equity, Bank of America, Wells Fargo/Wachovia and other large cap financial institutions. His key industries have included: energy, infrastructure, manufacturing, retail, real estate, services, hospitality, transportation, media & entertainment, auctioneering, and aerospace [military and commercial].

**Bankruptcy Counsel: Alan Braunstein – Riemer & Braunstein**

In his practice, Alan concentrates on bankruptcy and insolvency proceedings. He was appointed by the United States Trustee's Office and the United States Bankruptcy Court as a Chapter 11 Bankruptcy Trustee and a Chapter 11 Bankruptcy Examiner. In addition, he was named a Federal Court Receiver by the U.S. Federal District Court, on the recommendation of the Securities and Exchange Commission.

Alan has represented numerous trustees throughout New England. He routinely represents debtors, creditors' committees, landlords, unsecured creditors, and secured lenders in bankruptcy cases of publicly and privately held corporations throughout the Northeast and other states.



4

