**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **WALLER MARINE, INC.** | § | **Case No. 17-34230** |
| | § | |
| **DAVID BRICE WALLER** | § | |
| | § | **(Jointly Administered)** |
| **Debtors.** | § | **Chapter 11** |

**WALLER MARINE, INC.'S FIRST AMENDED COMBINED
<u>DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION</u>**

**WALLER MARINE, INC.'S COMBINED DISCLOSURE STATEMENT AND PLAN OF
REORGANIZATION HAS BEEN SET FOR HEARING ON CONFIRMATION OF THE
PLAN OF REORGANIZATION ON _____, 2018 AT _____.M., IN COURTROOM 400,
UNITED STATES COURTHOUSE, 515 RUSK STREET, HOUSTON, TEXAS, 77002.**

**Dated: November 19, 2018**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   THE SOLICITATION ........................................................................................2

III.  DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION OF TIME.......................................................................................................................3

    A.    Definitions.................................................................................................3

    B.    Rules of Interpretation ...........................................................................10

    C.    Computation of Time .............................................................................10

    D.    Incorporation of Documents by Reference ............................................10

IV.  DEBTOR'S HISTORY, ASSETS, LIABILITIES,  LITIGATION AND MAJOR EVENTS.............................................................................................................11

    A.    Incorporation and Ownership ................................................................11

    B.    Management ............................................................................................11

    C.    Products and Services ............................................................................11

    D.    Assets of WMI as of the Filing Date .....................................................12

    E.    Summary of Creditors and Debt as of Filing Date ................................13

    F.    Prepetition Litigation .............................................................................14

    G.    Events Leading to WMI's Bankruptcy Filing........................................15

V.   MAIN EVENTS IN THE BANKRUPTCY CASE ..........................................15

    A.    Bar Date .................................................................................................15

    B.    Meeting of Creditors .............................................................................15

    C.    Retention of Professionals .....................................................................15

    D.    Certain Orders and Events in the Bankruptcy Case...............................16

VI.  UNCLASSIFIED CLAIMS ..............................................................................17

    A.    Administrative Claims ...........................................................................18

        1.    Professional Fee Claims..............................................................18

        2.    U.S. Trustee Quarterly Fees........................................................18

        3.    All Other Administrative Claims ................................................19

        4.    Allowed Priority Tax Claims.......................................................19

VII. CLASSIFICATION AND TREATMENT  OF CLAIMS AND EQUITY INTERESTS ......................................................................................................19

    A.    CLASS 1 – Allowed Priority Non-Tax Claims ....................................20

    B.    CLASS 2 – Allowed Secured Claims ...................................................20

    C.    CLASS 3 – Allowed General Unsecured Claims of Non-Insiders ....................21

    D.    CLASS 4 – Allowed General Unsecured Claims of Insiders ................................21

    E.    CLASS 5 – Allowed Equity Interests. ..................................................22

VIII. MEANS FOR EXECUTION OF THE PLAN..................................................22

    A.    Funding the Plan ....................................................................................22

    B.    Reserves .................................................................................................22

    C.    Continued Corporate Existence. ............................................................22

    D.    Officers and Directors of the Reorganized Debtor. ..............................22

IX.  PROVISIONS GOVERNING DISTRIBUTIONS ...........................................23

    A.    Timing and Calculation of Distributions. .............................................23

    B.    Rights and Powers of the Reorganized Debtor to Make Distributions.................23

|  |  |  |  |
|---|---|---|---|
| | C. | Delivery of Distributions and Undeliverable or Unclaimed Distributions | 23 |
| | D. | Distributions to Holders of Disputed Claims | 24 |
| X. | | CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN | 25 |
| | A. | Conditions Precedent to Confirmation | 25 |
| | B. | Conditions Precedent to Effectiveness | 25 |
| | C. | Waiver of Conditions | 26 |
| | D. | Effect of Failure of Conditions | 26 |
| XI. | | PRESERVATION OF RETAINED CAUSES OF ACTION AND VESTING | 26 |
| | A. | Vesting | 26 |
| | B. | Retention and Enforcement of Causes of Action | 26 |
| | C. | Prosecution and Settlement of Retained Causes of Action and Objections to Claims | 28 |
| XII. | | TREATMENT OF EXECUTORY CONTRACTS  AND UNEXPIRED LEASES | 29 |
| XIII. | | MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN | 29 |
| | A. | Modifications and Amendments | 29 |
| | B. | Effect of Confirmation on Modifications | 29 |
| | C. | Revocation or Withdrawal of the Plan | 30 |
| XIV. | | RETENTION OF JURISDICTION | 30 |
| XV. | | EFFECTS OF CONFIRMATION | 32 |
| | A. | Bidding Effect | 32 |
| | B. | Exculpation and Limitation of Liability | 32 |
| XVI. | | MISCELLANEOUS PROVISIONS | 33 |
| | A. | Severability of Plan Provisions | 33 |
| | B. | Successors and Assigns | 33 |
| | C. | Consummation of the Plan | 33 |
| | D. | Governing Law | 33 |
| XVII. | | VOTING ON, AND CONFIRMATION OF, THE PLAN | 33 |
| | A. | Voting Procedures and Requirements | 33 |
| | B. | Acceptance by All Impaired Classes | 35 |
| | C. | Confirmation of the Plan | 36 |
| | D. | The Best Interests Test | 36 |
| | E. | Feasibility | 37 |
| XVIII. | | DISCLAIMERS | 37 |
| | A. | Proponent Has No Duty to Update | 37 |
| | B. | Source of Information | 37 |
| | C. | No Legal or Tax Advice Provided | 38 |
| | D. | No Admission Made | 38 |
| | E. | No Regulatory Agency Approval | 38 |
| XIX. | | CONCLUSION AND RECOMMENDATION | 38 |

**EXHIBITS TO DEBTOR'S COMBINED**

**DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION**

| EXHIBITS | DESCRIPTION |
|---|---|
| Exhibit "1" | Liquidation Analysis |
| Exhibit "2" | Ballot |
| Exhibit "3" | List of 90 Day Payments or Transfers |
| Exhibit "4" | Schedule of Rejected Contracts and Leases |
| Exhibit "5" | Letter of Intent – Tiderock Development, LLC |
| Exhibit "6" | Assignment of Tiderock LOI to WMS Holdings, Inc. |
| Exhibit "7" | Tax Credit Memo |

# I.    INTRODUCTION

On June 30, 2017, David Waller, individually, filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division ("**Bankruptcy Court**" or "**Court**").  On July 7, 2017, Waller Marine, Inc. ("**WMI**") filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

This Second Amended Combined Disclosure Statement and Plan of Reorganization (the "**Plan**" or "**DS/Plan**" or "**Combined DS/Plan**"), any amendments, supplements, and exhibits thereto, the accompanying Ballot form, and the related materials delivered together herewith are being furnished by WMI to Holders of Claims and Interests pursuant to § 1125,[1] in connection with the solicitation by the Debtor of votes to accept or reject the Plan and the transactions as described herein.  The Plan is proposed by WMI (the "**Proponent**") for the reorganization of the Debtor pursuant to the Bankruptcy Code.

The Plan constitutes a chapter 11 plan of reorganization for the Debtor.  The Plan provides for distributions to Holders of Allowed Claims and Interests in the Debtor.

This DS/Plan is designed to provide adequate information to enable Holders of Claims against and Interests in the Debtor to make an informed decision whether to vote to accept or reject the Plan.  All Holders of Claims and Interests are encouraged to read this DS/Plan in its entirety before voting to accept or reject the Plan.  The projected financial information contained herein has not been the subject of an audit, unless otherwise stated.

All Holders of Claims in the Voting Class should read and consider carefully the matters described in the DS/Plan prior to voting on the Plan.  In making a decision to accept or reject the Plan, each Holder of a Claim or Interest must rely on its own examination of the Debtor as described in this DS/Plan, including the merits and risks involved.  You are encouraged to seek the advice of qualified legal counsel with respect to the legal effect of any aspect of the DS/Plan.  In addition, Confirmation and Consummation of the Plan are subject to conditions precedent that could lead to delays in Consummation of the Plan.  There can be no assurance that each of these conditions precedent will be satisfied or waived or that the Plan will be consummated.  Even after the Effective Date, distributions under the Plan may be subject to delay so that disputed claims can be resolved.

With the exception of historical information, future events and matters discussed herein are "forward looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995.  Such forward looking statements are subject to risks, uncertainties and other factors which could cause actual results to differ materially.

No party is authorized by the Proponent to give any information or make any representations with respect to the DS/Plan other than that which is contained herein.  No representation or information concerning the Debtor, its business or the value of its properties has been authorized by the Proponent, other than as expressly set forth herein.  Any information or

---

[1]    All references to "§" reference the applicable section of the Bankruptcy Code.

representation given to obtain your acceptance or rejection of the Plan that is different from, or inconsistent with, the information or representations contained herein should not be relied upon by any Holders of Claims or Interests in voting on the Plan.

This Plan has been prepared in accordance with § 1125 and not in accordance with federal or state securities laws or other applicable non-bankruptcy law.  Entities holding, trading in, or otherwise purchasing, selling or transferring Claims against, Interests in or securities of, the Debtor should evaluate this Plan only in light of the purpose for which it was prepared.

This Plan has not been approved or disapproved by the Securities and Exchange Commission or by any state securities commission or similar public, governmental or regulatory authority, and neither such commission nor any such authority has passed upon the accuracy or adequacy of the statements contained herein.

With respect to contested matters, adversary proceedings and other pending or threatened actions (whether or not pending), this Plan and the information contained herein shall not be construed as an admission or stipulation by any Person or Entity, but rather as statements made in settlement negotiations governed by Rule 408 of the FEDERAL RULES OF EVIDENCE and any other rule or statute of similar import.

This Plan shall not be construed to be providing any legal, business, financial or tax advice. Each Holder of a Claim or Interest should, therefore, consult with their own legal, business, financial and tax advisors as to any such matters concerning the solicitation, the Plan or the transactions contemplated thereby.

If you are a Holder of a Claim or Interest, you should read this Combined Disclosure Statement and Plan carefully.  The Proponent urges all Holders of Claims in Voting Class receiving Ballots to accept the Plan as contained herein**.**

## II.    THE SOLICITATION

This DS/Plan is submitted by WMI to be used in connection with the solicitation of votes on the Plan. The Debtor has requested that the Bankruptcy Court hold a hearing on approval of this DS/Plan to determine whether this DS/Plan contains "adequate information" in accordance with § 1125.  Pursuant to § 1125(a)(1), "adequate information" is defined as "information of a kind, and in sufficient detail, as far as reasonably practicable in light of the nature and history of the Debtor and the condition of the Debtor's books and records, … that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant Class to make an informed judgment about the plan …."

A hearing to consider the Confirmation of the Plan has been set for _____ 2018, at ___ _.m., in Courtroom 400, United States Courthouse, 515 Rusk Street, Houston, Texas (the "***Confirmation Hearing***").

Objections to the Confirmation of the Plan must be in writing and must be Filed with the Clerk of the Bankruptcy Court and served on the counsel for the Proponent listed below to ensure receipt by them on or before 5:00 p.m., on _____, 2018.  Bankruptcy Rule 3007 governs the form of any such objection.

### III.   DEFINITIONS, RULES OF INTERPRETATION
### AND COMPUTATION OF TIME

#### A.   <u>Definitions</u>

For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article.  Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules.  Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

***Administrative Claim*** or ***Administrative Priority Claim*** means a Claim, Cause of Action, right, or other liability, or the portion thereof, that is entitled to priority under Bankruptcy Code sections 326, 327, 330, 503(b), 506(c), 507(a)(2), 507(b), and 1103, including (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Debtor's Estate and/or in connection with operating WMI's business (such as wages, salaries, or payments for goods and services); (ii) Professional Compensation Claims; and (iii) all fees and charges assessed against the Estate under 28 U.S.C. § 1930.

***Administrative Claim Bar Date*** means, except as provided in Article VI herein, the first Business Day that is thirty (30) days after the Effective Date or such earlier deadline as established by an order of the Bankruptcy Court.

***Affiliate*** has the meaning prescribed in Bankruptcy Code section 101(2).

***Allowed*** means, with respect to any Claim or Interest, except as otherwise provided in the Plan, a Claim or Interest allowable under Bankruptcy Code section 502: (a) for which a Proof of Claim or proof of interest was timely Filed, and as to which no objection or other challenge to allowance thereof has been Filed, or if an objection or challenge has been timely Filed, such Claim or Interest is allowed by Final Order; (b) for which a Proof of Claim or proof of interest is not Filed and that has been listed in a Debtors' Schedules of Assets and Liabilities or Schedule of Equity Security Holders and is not listed as disputed, contingent, or unliquidated; or (c) that is deemed allowed under the Plan.  For purposes of determining the amount of an Allowed Claim or Allowed Interest, there shall be deducted therefrom the amount of any claim that WMI may hold against the Holder of such Claim under Bankruptcy Code section 553 or under the doctrine of recoupment.

***Allowed Claim*** means a Claim or any portion thereof (i) that has been Allowed by a Final Order, (ii) that either has been Scheduled as a liquidated, non-contingent, undisputed Claim in an amount greater than zero in the Debtor's Schedules, as the same may from time to time be amended in accordance with the Bankruptcy Code, Bankruptcy Rules or order of the Bankruptcy Court, or is the subject of a timely Filed Proof of Claim as to which either no objection to its allowance has been Filed (either by way of objection or amendment to the Schedules) within the periods of limitation fixed by the Bankruptcy Code or by any order of the Bankruptcy Court, or any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order, or (iii) that is expressly Allowed in a liquidated amount in the Plan; provided, however

that with respect to an Administrative Claim, "Allowed Claim" means an Administrative Claim as to which a timely request for payment has been made in accordance with this Plan (if such written request is required) or other Administrative Claim, in each case as to which (i) a timely objection has not been Filed, or (ii) a timely objection is Filed and such objection has been settled, waived through payment, or withdrawn, or has been denied by a Final Order.

***Allowed […] Claim*** means an Allowed Claim in the particular Class or category specified.

***Allowed […] Interest*** means an Allowed Interest in the particular Class or category specified.

***Avoidance Actions*** means any and all actual or potential Claims and Causes of Action that may be commenced before or after the Effective Date, to avoid a transfer of property or an obligation incurred by the Debtor pursuant to any applicable section of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code, or under similar or related state or federal statutes and common law.

***Ballot*** means the applicable form or forms of ballot(s) to be distributed to Holders of Claims entitled to vote on the Plan and on which the acceptance or rejection of the Plan is to be indicated.

***Bankruptcy Case*** means the Chapter 11 bankruptcy case commenced by the Debtor upon the filing of a voluntary petition on the Petition Date, styled *In re Waller Marine, Inc.*, Case No. 17-34230.

***Bankruptcy Code*** means title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

***Bankruptcy Estate*** or ***Estate*** shall mean the estate of the Debtor created under § 541 upon the filing of the Bankruptcy Case.

***Bankruptcy Rules*** means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case or proceedings therein, as the case may be.

***Bar Date*** means November 13, 2017, the date established by the Bankruptcy Court by which Proofs of Claim must be Filed with respect to such Claims, other than Administrative Claims, Claims held by Governmental Units, or other Claims or Interests for which the Bankruptcy Court entered an order excluding Holders of such Claims or Interests from the requirement of Filing Proofs of Claim.

***Cash*** means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

***Causes of Action*** means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and

claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) Avoidance Actions; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

***Claim*** means a claim against any portion of the Debtor's Bankruptcy Estate, whether or not asserted, as defined in § 101(5).

***Claims Register*** means the official register of Claims.

***Class*** means a category of Claims or Interests as described in the Plan pursuant to Bankruptcy Code section 1122(a).

***Confirmation*** means entry by the Bankruptcy Court of the Confirmation Order confirming this Plan.

***Confirmation Date*** means the date of entry by the Bankruptcy Court of the Confirmation Order.

***Confirmation Hearing*** means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan.

***Confirmation Order*** means the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code § 1129.

***Consummation*** means the occurrence of the Effective Date.

***Cure Claim*** means a Claim based upon the Debtor's defaults on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtor pursuant to Bankruptcy Code section 365.

***Cure Claim Submission Deadline*** means _____ ___, 2018, the date by which all alleged amounts accrued or alleged defaults through the Effective Date must be Filed with the Bankruptcy court.

***David Waller*** means Debtor David Brice Waller.

***Debtor*** means Waller Marine, Inc.

***Disputed Claim*** means a Claim in a particular Class as to which a Proof of Claim has been Filed or is deemed to have been Filed under applicable law or an Administrative Claim as to which an objection has been Filed in accordance with the Plan, the Bankruptcy Code or the Bankruptcy Rules, which an objection has not been withdrawn or determined by a Final Order. For purposes of the Plan, a Claim is a Disputed Claim prior to any objection to the extent that (a) the amount of a Claim specified in a Proof of Claim exceeds the amount of any corresponding Claim scheduled by the Debtor in the Schedules of Assets and Liabilities; (b) any corresponding Claim scheduled by the Debtor in the Schedules of Assets and Liabilities has been scheduled as disputed, contingent or unliquidated, irrespective of the amount scheduled; (c) no corresponding Claim has been scheduled by the Debtor in the Schedules of Assets and Liabilities; or (d) the Claim is subject to disallowance pursuant to Bankruptcy Code section 502(d).

***Disputed Claims Reserve*** means the reserve to be established under the Plan and held by the Debtor from any unencumbered Cash for the benefit of the Holders of Disputed Claims, pending allowance, in an amount equal to the Holder's Pro Rata share of their respective Class.

***Distribution Order*** means an order from the Bankruptcy Court authorizing the distribution of funds to Holders of Allowed Claims.

***Distribution Record Date*** means the Confirmation Date.

***DS/Plan***, ***Disclosure Statement and Plan*** or ***Combined DS/Plan*** means this Combined Disclosure Statement and Plan of Reorganization.

***Effective Date*** means the date that is the first Business Day after the Confirmation Date, on which (a) no stay of the Confirmation Order is in effect, and (b) all conditions to the effectiveness of the Plan have been satisfied or waived as provided in the Plan.

***Entity*** means any Person, estate, trust, Governmental Unit, or United States trustee, as set forth in Bankruptcy Code section 101(15).

***Equity Interests*** means the membership interests in the Debtor held by all Holders of such interests that were outstanding as of the Petition Date.

***Estate Property*** means all right, title, and interest in and to any and all property of every kind or nature, owned by the Debtor or its Estate on the Petition Date as defined by Bankruptcy Code section 541.

***Exhibit*** means an exhibit annexed to the Plan, or such other document Filed in the Bankruptcy Case as the context requires.

***File***, ***Filed***, or ***Filing*** means, as to any document or pleading, properly and timely file, filed or filing with the Bankruptcy Court or its authorized designee in the Bankruptcy Case.

***Filing Date*** means July 7, 2017, the date when WMI filed the Bankruptcy Case.

***Final Order*** means an order or judgment of the Bankruptcy Court, as entered on the docket in the Debtor's Bankruptcy Case, the operation or effect of which has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was Filed or, if Filed, remains pending.

***GAAP*** means generally accepted accounting principles as in effect from time to time in the United States.

***General Unsecured Claim*** means an Unsecured Claim that is not: (a) an Administrative Claim; (b) a Professional Compensation Claim; (c) a Priority Tax Claim; or (d) a Priority Non-Tax Claim.

***Governmental Unit*** means any governmental unit, as defined in Bankruptcy Code section 101(27).

**Holder** means (a) as to any Claim, (i) the owner or holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, or (ii) if no Proof of Claim has been filed with respect to such Claim, the owner or holder of such Claim as such is reflected on the Schedules or the books and records of the Debtor or as otherwise determined by order of the Bankruptcy Court, or (iii) if the owner or holder of such Claim has assigned or transferred the Claim to a third party, and the Debtor has received sufficient written evidence of such assignment or transfer, the assignee or transferee; and (b) as to any Equity Interest, the record owner or holder of such Equity Interest as shown on the stock register that is maintained by the Debtor or as otherwise determined by order of the Bankruptcy Court.

**Impaired** or **Impairment** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of Bankruptcy Code section 1124.

**Insider** has the meaning set forth in Bankruptcy Code section 101(31).

**Interest**, **Equity Interest**, or **Membership Interest** means any ownership interest in WMI, as of the Petition Date, including, but not limited to, an interest in any issued, unissued, authorized or outstanding shares or stock, including ordinary shares, common stock, preferred stock, or other instrument evidencing any fixed or contingent ownership interest in the Debtor, whether or not transferable, together with any warrants, options, or contractual rights to purchase or acquire such interests at any time and all rights arising with respect thereto.

**IRS** means the Internal Revenue Service.

**Judicial Code** means title 28 of the United States Code, 28 U.S.C. §§ 1 – 4001.

**Lien** means a lien, security interest, or other interest or encumbrance asserted against any Estate Property as defined in Bankruptcy Code section 101(37).

**Other Distributable Proceeds** means the proceeds of the liquidation of unencumbered assets of the Estate, if any, including but not limited to, proceeds derived from the prosecution of Causes of Action.

**Person** means and includes natural persons, corporations, limited partnerships, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other legal entities, regardless of whether they are governments, agencies, or political subdivisions thereof.

**Plan** means the Chapter 11 Plan of Reorganization Filed by Debtor, as such document may be amended or modified.

**Plan Documents** means, collectively those documents in furtherance of Consummation of the Plan and/or to be executed in order to consummate the transactions contemplated under the Plan, which may be Filed by the Debtor with the Bankruptcy Court.

**Priority Non-Tax Claim** means a Claim asserted under Bankruptcy Code sections 507(a)(3-7 and 9-10).

***Priority Tax Claim*** means an Claim asserted under Bankruptcy Code section 507(a)(8).

***Professional*** means an Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

***Professional Compensation Claim*** means a Claim for compensation or reimbursement of expenses of a Professional incurred on and after the Petition Date and prior to the Effective Date, including fees and expenses incurred in preparing final fee applications and participating in hearings on such applications, and requested in accordance with the provisions of Bankruptcy Code sections 326, 327, 328, 330, 331, 502(b) or 1103.

***Professional Compensation Claim Bar Date*** means, except as provided in Article VI herein, forty-five (45) days after the Effective Date.

***Professional Compensation Claim Objection Deadline*** means twenty-four (24) days after the Professional Compensation Claim Bar Date.

***Proponent*** means Debtor.

***Proof of Claim*** means a proof of Claim Filed against WMI in the Bankruptcy Case by the applicable Bar Date.

***Pro Rata*** means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

***Released Party*** means, collectively, and in each solely in their capacities as such, the Debtor, and with respect to the Debtor, its Professionals, successors, assigns, subsidiaries, Affiliates, managed accounts and funds, current directors and officers, principals, shareholders, members, partners, managers, employees, subcontractors, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Entities' respective heirs, executors, estates, servants, and nominees.

***Releasing Party*** means (i) Holders of all Claims or Interests who vote to accept the Plan; (ii) the Holders of Claims or Interests that are Unimpaired under the Plan; and (iii) the Holders of Claims

or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan.

***Reorganized Debtor*** means Waller Marine, Inc., or its successors or assigns, by merger, consolidation, or otherwise, on and after the Effective Date.

***Retained Causes of Action*** means all Causes of Action that belong to WMI, but shall not include any action against a Released Party.

***Sampson*** means Sampson Energy Capital, LLC.

***Schedules*** has the meaning ascribed to such term in Article III.

***Secured Claim*** means a Claim that is secured by a valid, perfected and enforceable Lien that is not subject to avoidance under bankruptcy or non-bankruptcy law, but only to the extent of the value, as of the Effective Date or such later date as is established by the Bankruptcy Court, of claimant's interest in the Debtor's property securing the Claim as determined by a Final Order of the Bankruptcy Court pursuant to § 506 or as otherwise agreed upon in writing by Debtor and the Holder of such Claim.

***Secured Tax Claim*** means a Secured Claim for taxes held by a Governmental Unit, including cities, counties, school districts, and hospital districts, (a) entitled by statute to assess taxes based on the value or use of real and personal property and to obtain an encumbrance against such property to secure payment of such taxes or (b) entitled to obtain an encumbrance on property to secure payment of any tax claim specified in Bankruptcy Code section 507(a)(8).  Secured Tax Claims shall not include any such Claims secured by liens / security interests that are avoidable, unperfected, subject to subordination, or otherwise unenforceable.

***SOFA*** has the meaning ascribed to such term in Article III.

***Tiderock*** means Tiderock Development, LLC.

***Unimpaired*** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of Bankruptcy Code section 1124.

***Unsecured Claim*** means a Claim that is not a Secured Claim and that is not entitled to priority under Bankruptcy Code section 507(a)(1-9).  The term specifically includes, pursuant to Bankruptcy Code section 506(a), any Claim of a creditor against WMI to the extent that such creditor's Claim is greater than the value of the Lien securing such Claim, any Claim for damages resulting from rejection of any Executory Contract or Unexpired Lease under Bankruptcy Code

section 365, any tort Claims or contractual Claims or Claims arising from damage or harm to the environment and, and any Claim not otherwise classified under the Plan.

***Voting Class*** means a Class entitled to vote to accept or reject the Plan.

***Voting Deadline*** means _____, 2018 at 5:00 p.m. (CT), the deadline by which Ballots to accept or reject the Plan must be received by WMI's counsel in order to be counted.

***Waller Plan*** means the plan of reorganization of David Waller filed contemporaneously with this Plan.

***Waller Plan Cash*** means the amount of money required on the effective date of the Waller Plan to satisfy the Waller Plan cash needs.

***WMI Tax Credit*** means the tax credit described in Exhibit 6 hereto with a remaining value of $10,338,859.00.

***WMI*** means Debtor Waller Marine, Inc.

***WMS*** means WMS Holdings, Inc.

## B.    <u>Rules of Interpretation</u>

For purposes of this Plan: (1) any reference in this Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (2) any reference in this Plan to an existing document or exhibit Filed or to be Filed means that document or exhibit as it may have been or may be amended, supplemented, or otherwise modified; (3) unless otherwise specified, all references in this Plan to Sections or Articles are references to Sections or Articles of this Plan; (4) the words "herein," "hereto," "hereunder," and other words of similar import refer to this Plan in its entirety rather than to a particular portion of this Plan; (5) captions and headings contained in the Plan are inserted for convenience and reference only, and are not intended to be part of or to affect the interpretation of the Plan; (6) wherever appropriate from the context, each term stated in either the singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; (7) any reference to an Entity as a Holder of a Claim or Interest includes the Entity's successors and assigns; (8) any reference to docket numbers of documents Filed in the Bankruptcy Cases are references to docket

numbers under the Bankruptcy Court's CM/ECF system; and (9) the rules of construction set forth in Bankruptcy Code section 102 and the Bankruptcy Rules shall apply.

**C.      Computation of Time**

All times referenced in this Plan are prevailing Central Time.  In computing any period of time prescribed or allowed by this Plan, the provisions of FED. R. BANKR. P. 9006(a) shall apply.

**D.      Incorporation of Documents by Reference**

This Plan incorporates by reference certain documents relating to the Debtor that are not presented herein or delivered herewith.  The documents that have been Filed in the Debtor's Bankruptcy Case are incorporated by reference herein in their entirety, including all amendments thereto Filed prior to the date set for Confirmation, including the following documents: (a) the Debtor's Schedules of Assets and Liabilities ("*Schedules*"), filed on August 7, 2017 [ECF Doc. 44] and (b) the Statement of Financial Affairs ("*SOFA*"), including exhibits to the SOFA, filed on August 7, 2017 [ECF Doc. 45].  Documents and pleadings filed in this case are available at the following website: http://www.txsb.uscourts.gov/.

## IV.      DEBTOR'S HISTORY, ASSETS, LIABILITIES, LITIGATION AND MAJOR EVENTS

**A.      Incorporation and Ownership**

Established in 1974, Waller Marine, Inc. is a Texas corporation based in Houston, Texas. As of the Filing Date, WMI was solely owned by David Waller, a Naval Architect with over fifty years in the marine industry.

**B.      Management**

As of the Filing Date, the Debtor was managed by David Waller, as President.

**C.      Products and Services**

The following is a brief description of the Debtor's products and services:

   a.      **Floating Power**.  WMI has led the world in the design and construction of Floating Power Plants (FPPs) with both diesel and gas turbine generating technology in simple cycle and combined cycle applications.  WMI has designed, engineered and constructed what are today the world's largest FPPs: the 220 MW combined cycle FPP installed in India and the 342 MW simple cycle FPP installed in Venezuela.

   WMI's designs have applied gas turbines from most of the major manufacturers of aero derivative and industrial gas turbines in its range of FPP designs varying from 30 MW simple cycle to 500 MW combined cycle units, some with LNG regasification capability.  As the energy industry evolves, WMI continues to

innovate and offer new and alternative power generation equipment.  WMI is in the early stages of designing large combined cycle FPPs on the order of 1000 MW using "H" Class industrial machines with LNG storage and regasification.

b.  **Small-Scale LNG**.  Beginning with the construction of the Methane Princess in the 1960's, WMI's principals have had a long association with LNG ship transportation.  This association progressed through the 1980's with consultation on the construction of the nine (9) El Paso ships built during the 1970's, investigation and analysis of different LNG containment systems for the US Maritime Administration and the design of an LNG delivery system to Hawaii in the 1970's.  WMI has participated in rejuvenation of the LNG business in the early 2000's and continues this program.

Today, WMI designs small scale LNG systems including: (i) export terminals, (ii) small scale liquefaction facilities, (iii) storage, and (iv) small scale transport ships and LNG ATB's.  The LNG ATB RV system is designed to act as an import/storage facility as well as its transport component for fueling power plants.

c.  **Process Marinization**.  WMI has been known to provide innovative solutions to solve complex problems surrounding the oil & gas and power industries, often times developing solutions not previously found in the industry.  WMI's extensive knowledge of the marine environment combined with other technical disciplines allows WMI to identify potential problems and offer solutions to issues not otherwise considered.  Clients with new and innovative ideas are a perfect fit for utilizing WMI's project development services.

Examples of these types of projects range from more traditional projects (e.g. cable lay barges or floating LNG-fueled power generation) to more challenging projects (e.g. floating desalination systems, floating refinery capacity, floating gas-to-liquid projects).

d.  **Naval Architecture and Engineering**.  WMI leverages its multi-discipline experience with the help of advanced proprietary software to approach challenges creatively and economically.  WMI's personnel are equipped to provide marine technical and regulatory support to its clients in all areas of marine transportation, facilities and offshore oil and gas industries.  WMI also works closely with industry regulatory bodies including the major classification societies, the United States Coast Guard, and other international agencies to ensure all designs conform to relevant standards and protocols.

e.  **EPC Contracting**.  Stemming from the experience of the principals of WMI in the major shipbuilding industry and having operated its own shipyard in the past, WMI is able to undertake a Turnkey EPC role for the construction of marine vessels of every description and in particular the construction of floating power generation facilities (FPPs) of its proprietary design.  Such has been the case in the past when WMI undertook an EPC contracting role for Enron for construction, delivery and

-12-

commissioning of a number of FPPs installed in Nigeria and more recently the 342 MW of FPPs that WMI constructed in Texas for installation in Venezuela.

WMI has associations with shipyards worldwide, thus providing an ability to construct vessels by using the lowest cost and most efficient qualified contractor. WMI can also provide different levels of service in the shipyard itself.  These can range from full EPC capabilities to the more common practices of "Owner's Engineer/Project Management/Representative" in order to provide management and oversight roles in the shipyard environment.  This is often a preferred option when working with international shipyards that are able to provide a full gamut of services.

**D.**    **Assets of WMI as of the Filing Date**

| ASSETS | VALUE[2] |
|---|---|
| Cash | $5,285.41 |
| Deposits and Prepayments | $0.00 |
| Accounts Receivable (Net) | $24,101.84 |
| Investments | $0.00 |
| Inventory | $0.00 |
| Office Furniture | $92,000.00 |
| Office Equipment | $10,057.83 |
| Collectibles (Artwork) | $15,000.00 |
| Machinery, Equipment and Vehicles | $200,000.00 |
| Real Property | $0.00 |
| Intangibles and Intellectual Property | Unknown |
| Notes Receivable | $463,805.00 |
| WMI Tax Credit | $10,338,859.00 |
| **TOTAL:** | **$11,149,109.08** |
| Claim against D&Os, management, and other Insiders | Unknown |
| Chapter 5 Claims | Unknown |

**E.**    **Summary of Creditors and Debt as of Filing Date**

The description of Claims in this Plan does not necessarily imply that any Claim is an Allowed Claim.  All Claims, and the validity and/or extent of any Liens securing such Claims, are subject to further investigation and analysis and, depending on the conclusion of such analysis, may be subject to an objection.

---

[2]Value is as asserted by the Debtor as of the Filing Date.

1.     **Secured Claims:**

The following is a graphic presentation of the total prepetition Secured Claims against the Debtor as of the Filing Date:

| TABLE 2 | | |
|---|---|---|
| **SECURED CREDITOR** | **CURRENT BALANCE**[3] | **COLLATERAL** |
| Business First Bank | $2,470,130.27 | Oceangoing Vessel "Victory" |
| Jonathan Gelman | $575,000.00 | Debtor's Accounts |
| Westlex  Corporation | $0.00 | 2016 Lexus GX 460 Lease |
| TOTAL | $3,045,130.27 | |

2.     **Priority Unsecured Claims**

As set forth in the Debtor's Schedule E, there are no creditors holding priority Unsecured Claims.

3.     **General Unsecured Claims**

After reviewing the Debtor's Schedule F and the proofs of claim filed in the case, the Debtor estimates that the total amount of Allowed Unsecured Claims will be approximately $3.5 million.  The majority of the $3.5 million in Unsecured Claims consists of the deficiency claim of Business First Bank in the approximate amount of $2.5 million.

David Waller's unsecured creditors' claims not duplicative of claims in this Debtor's case (the "***Waller Exclusive Unsecured Claims***") will share, Pro Rata with Class 3 creditors herein, in the WMI Tax Credit Distributions described in **Article VII C**. below.  The Debtor estimates that the total amount of those claims equal approximately $190,000.  However, the Waller Exclusive Unsecured Claims will also be receiving cash payments from David Waller's disposable income which may reduce the total amount of Waller Exclusive Unsecured Claims participating in the WMI Tax Credit Distributions.

---

[3] Estimated balance as of the Filing Date.

### F.     Prepetition Litigation

**a.**     Prepetition, Jonathan Gelman ("*Gelman*") sued WMI in federal district court on account of a promissory note issued by a joint venture in which WMI was a party. The case is Cause No. 14-cv-06548-BMS in the United States District Court for the Eastern District of Pennsylvania.  On or about May 25, 2016, Gelamn obtained a judgment against WMI in the amount of $575,000.00 plus interest.

On or about January 26, 2017, Gelman initiated an action in Harris County District Court to collect on the judgment.  The case is Cause No. 2017-05529 in the 61st Judicial District Court of Harris County, Texas. On March 31, 2017, the parties entered into an Irrevocable Agreed Order for Turnover Relief and Post-Judgment Injunction in the Harris County District Court.  Part of the agreement called for WMI to convey to Gelman a security interest in all accounts, receivables, contract rights, and proceeds thereof, now owned or hereafter acquired.  On March 31, 2017, Gelman filed a UCC-1 to perfect his security interest.

**b.**     On or about January 23, 2013, Canyon Supply & Logistics, LLC commenced a civil action against the Debtors, among others, to collect an alleged debt.  The case is Cause No. 2013CCV-60115-2, styled *Canyon Supply & Logistics, LLC, vs. Max Financial, LLC; Waller Marine, Inc.; Diversity Max, LLC; Diversity Max Canyon Port, LLC; Diversity Max CP Holdings, LLC; Jeffrey Greenwalt; and David Waller.*

Additional information about the various litigation involving the Debtor is provided in Paragraph 7 of Part 3 of the SOFA, which is incorporated herein by reference.

### G.     Events Leading to WMI's Bankruptcy Filing.

Because of WMI's heavy dependency on the demand for liquefied natural gas and the oil and gas industry as a whole, WMI became financially distressed due to the oil and gas crisis that occurred in the years leading up to the Bankruptcy Case.  In 2017, the Debtor's financial difficulties proved unmanageable.  After calls by banks on their loans and lines of credit, and a demand for payment of a secured judgment, the Debtor ultimately determined to seek bankruptcy relief.  The Debtor's Bankruptcy Case was filed on July 7, 2017 in order to give the Debtor the necessary breathing room to effectively reorganize.

## V.     MAIN EVENTS IN THE BANKRUPTCY CASE

### A.     Bar Date

**NOTICE IS HEREBY GIVEN THAT THE COURT HAS SET AS THE BAR DATES IN THIS CASE <u>NOVEMBER 13, 2017,</u> THE DEADLINE WITHIN WHICH NON-GOVERNMENTAL PROOFS OF CLAIM OR INTERESTS MUST BE FILED, AND <u>JANUARY 9, 2018,</u> THE DEADLINE WITHIN WHICH GOVERNMENTAL PROOFS OF CLAIM MUST BE FILED.  FAILURE TO FILE A PROOF OF CLAIM OR INTEREST REQUIRED BY THE BANKRUPTCY CODE OR BANKRUPTCY RULES BY THE BAR DATE MAY RESULT IN YOUR CLAIM OR INTEREST IN THIS CHAPTER 11**

PROCEEDING BEING <u>DISALLOWED</u>.  PLEASE FILE YOUR PROOFS OF CLAIM OR INTEREST THROUGH AN ATTORNEY ELECTRONICALLY, OR BY MAIL ADDRESSED TO: DAVID J. BRADLEY, CLERK OF COURT, P. O.  BOX 61010, HOUSTON, TEXAS 77208.

**B.**     **Meeting of Creditors**

The Court set the 341 meeting of creditors for August 15, 2017, at 3:00 p.m. No creditors' committee was formed during the Bankruptcy Case.  [ECF Doc. 51].

**C.**     **Retention of Professionals**

On August 1, 2017, David Waller filed his Application to Employ Corral Tran Singh, LLP as Counsel for David Brice Waller Pursuant to 11 U.S.C. § 327(a).  [ECF Doc. 37].  On August 15, 2017, the Court entered its Order on Application to Employ Corral Tran Singh, LLP as Counsel for Debtor David Waller.  [ECF Doc. 49].

On August 7, 2017, WMI filed its Application for an Order Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code authorizing the Employment and Retention of Okin Adams LLP as Counsel for the Debtor. [ECF Doc. 43]. On August 25, 2017, the Court entered its Order Pursuant to Sections 327(a) and 328(s) of the Bankruptcy Code Authorizing the Employment and Retention of Okin Adams LLP as Counsel for Waller Marine, Inc. [ECF Doc. 61].

On August 17, 2017, David Waller filed his Application to Employ Vanguard Commercial Group as real estate broker.  [ECF Doc. 52].  On August 24, 2017, the Court entered its Order Authorizing Employment of Vanguard Commercial Group – Gulf Coast, LLC.  [ECF Doc. 59].

On October 2, 2017, the Debtors collectively filed and Application Pursuant to Section 327(a) of the Bankruptcy Code Authorizing the Employment and Retention of Stout Risius Ross, Inc. as Financial Advisor to the Debtors. [ECF Doc. 78]. On October 11, 2017, the Bankruptcy Court entered its Order Approving Application Pursuant to Section 327(a) of the Bankruptcy Code Authorizing the Employment and Retention of Stout Risius Ross, LLC as Financial Advisor to the Debtors. [ECF Doc. 87].

On January 25, 2018, the Debtors collectively filed an Application for an Order Pursuant to Section 327(a) of the Bankruptcy Code Authorizing the Employment and Retention of Miller Newlin & Co., P.C. as Accountant for the Debtors.  [ECF Doc. 135].  On February 8, 2018, the Bankruptcy Court entered its Order Authorizing the Retention and Employment of Miller Newlin & Co., P.C. as Accountant for the Debtors. [ECF Doc. 146].

On March 5, 2018, the Debtors collectively filed an Application for an Order Pursuant to Section 327(e) of the Bankruptcy Code Authorizing the Employment and Retention of Anderson Burnside PLLC as Special Litigation Counsel.  [ECF Docs. 160 and 161].  On March 20, 2018, the Bankruptcy Court entered its Order Granting Application to Employ Anderson Burnside PLLC as Special Litigation Counsel for the Debtors.  [ECF Doc. 171].

### D.      Certain Order and Events in the Bankruptcy Case

On July 10, 2017, the Debtors collectively Filed an Emergency Motion for Entry of Order Authorizing Joint Administration of Cases.  [ECF Doc. 3].  On July 13, 2017, the Bankruptcy Court entered its Order for Joint Administration and Transfer of Case.  [ECF Doc. 15].

On July 11, 2017, the Debtors collectively Filed an Emergency Motion for Interim and Final Orders (I) Authorizing Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code; (II) Granting Adequate Protection for the Use Thereof; and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 as to Use of Cash Collateral.  [ECF Doc. 8].  On July 13, 2017, the Bankruptcy Court entered its Interim Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code; (II) Granting Adequate Protection for the Use Thereof; and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 as to Use of Cash Collateral.  [ECF Doc. 14].  On December 4, 2017, the Bankruptcy Court entered the Agreed Final Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code; and (II) Granting Adequate Protection for the Use Thereof.  [ECF Doc. 121].

On July 17, 2017, the Debtors collectively Filed an Emergency Motion to Extend Time to File Schedules of Assets and Liabilities, Schedules of Executory Contracts and Unexpired Leases, and Statements of Financial Affairs.  [ECF Doc. 25].  On July 18, 2017, the Bankruptcy Court entered its Order Granting Debtors' Emergency Motion.  [ECF Doc. 26].  On August 7, 2017, WMI filed its Schedules [ECF Doc. 44] and SOFA [ECF Doc. 45].

On August 3, 2017, David Waller filed an Emergency Motion for Authority to Enter into Insurance Premium Financing Agreement.  [ECF Doc. 39].  On August 4, 2017, the Court entered its Order granting the Motion.  [ECF Doc. 41].

On August 9, 2017, Business First Bank filed a Motion for Entry of an Agreed Order Lifting the Automatic Stay as to the Vessels Trafalgar and Victory.  [ECF Doc. 47].  On August 21, 2017, the Bankruptcy Court entered the Agreed Order Lifting the Automatic Stay as to the Vessels Trafalgar and Victory.  [ECF Doc. 54].

On October 18, 2017, the Debtors collectively Filed an Emergency Motion for Expedited Abandonment Procedure Pursuant to 11 U.S.C. §§ 102, 554, and Bankruptcy Rule 6007.  [ECF Doc. 90].  The same day, the Bankruptcy Court entered the Order Granting Debtors' Emergency Motion.  [ECF Doc. 91].

On October 19, 2017, the Debtors Filed a Notice of Abandonment of Property of the Estate on an Expedited Basis Pursuant to the Court's Order at Docket No. 91.  [ECF Doc. 92].

On October 24, 2017, Cameron Rental Properties, LLC Filed a Motion for Entry of an Agreed Order Lifting the Automatic Stay as to the Vessels Trafalgar and Victory.  [ECF Doc. 95].  On October 26, 2017, the Bankruptcy Court entered the Agreed Order Lifting the Automatic Stay as to the Vessels Trafalgar and Victory.  [ECF Doc. 96].  The same day, Business First Bank Filed an Objection to Debtors' Notice of Abandonment.  [ECF Doc. 96].  After a hearing on December 14, 2017, the Bankruptcy Court entered its Order Abandoning Property of the Estate.  [ECF Doc. 131].

On February 7, 2018, Comerica Bank Filed a Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d). [ECF Doc. 144]. On February 26, 2018, the Debtors collectively Filed their Response in Opposition to Motion for Relief From Automatic Stay Filed by Comerica Bank. [ECF Doc. 152]. On February 27, 2018, the parties Filed an Agreed Order on Motion for Relief From Stay. [ECF Doc. 153]. On March 14, 2018, the Bankruptcy Court entered its Amended Agreed Order on Motion for Relief From Stay. [ECF Doc. 168].

On February 26, 2018, David Waller Filed his Motion for Authority to Sell 14410 Sylvanfield Dr. Pursuant to 11 U.S.C. § 363. [ECF Doc. 150]. On March 4, 2018, the Bankruptcy Court entered its Order Authorizing Sale. [ECF Doc. 157]. On March 23, 2018, David Waller Filed his Emergency Motion for Supplemental Order Authorizing Sale. [ECF Doc. 173].

**The Canyon Port Settlement:**

On April 20, 2018, the Debtor and David Waller filed a motion to compromise with Canyon Port Holdings, LLC and Canyon Supply & Logistics, LLC and Waller Max Gas, LLC ("Canyon") [ECF Doc. 182]. The controversy stemmed from a lawsuit filed by Canyon against the Debtor and David Waller. As of the Petition Date, the lawsuit was still pending and Canyon filed a proof of claim in the Debtor's case in the amount of $849,750,260.00.

On May 25, 2018, the Court entered an order approving the motion to compromise [ECF Doc. 189]. The settlement provides for the following:

Canyon Supply & Logistics, LLC ("Canyon") agrees to accept from WMI and agrees to pay Canyon the sum of fifty thousand dollars ($50,000.00) (the "Settlement Amount") for full and final settlement as to WMI and Waller of the above Litigation and claims arising from the Litigation, conditioned upon the Settlement Amount being available to WMI following the exercise of the [approximately] ten million dollar ($10,000,000.00) tax credit held by WMI.

Canyon shall have an allowed claim of $50,000.00 with respect to its proofs of claim filed in the WMI and Waller cases (claim nos. 17 and 12, respectively). Any Plan filed in these cases will address these claims and treat them in accordance with the terms of this Order.

Canyon agrees to credit WMI, dollar-for-dollar, any receipt of funds from any other party to the Litigation.

**Sampson's Purchase of the Gelman Claim**

On June 27, 2018, Sampson Energy Capital, LLC filed a notice of transfer of claim [ECF Doc. 195], notifying the Court and parties in interest that Sampson had purchased the secured claim of Jonathan Gelman [claim no. 14] in the claimed amount of $605,053.42.

**Objections to Claims 14 and 21 and Motion to Estimate Claim of Diversity Max, LLC**

On July 20, 2018, the Debtor and David Waller filed (i) an objection to Claim numbers 14 and 21 of Diversity Max, LLC (ECF Doc. 202) requesting that Claim numbers 14 and 21 be disallowed in their entirety, and (ii) a motion to estimate the claims of Diversity Max, LLC [ECF Doc. 203] requesting that the court estimate Diversity Max's claims at zero for purposes of voting

and distribution.  On August 16, 2018, the Debtor and David Waller filed an additional objection to Claim numbers 14 and 21 (ECF Doc. 211) based on separate but related reasons to disallow such claims.

On October 9, 2018, the Court entered its order precluding Diversity Max, et al. from voting on the Debtors' respective Plans, but denying the motion to estimate without prejudice (ECF Doc. 246).  On that same date, the Court entered its order disallowing Claim number 14 in its entirety (ECF Doc. 245).

**THESE PLEADINGS CAN BE ACCESSED THROUGH THE PACER ELECTRONIC CASE FILING SYSTEM FOR THE SOUTHERN DISTRICT OF TEXAS, WITH A PACER ACCOUNT WHICH CAN BE PURCHASED AT HTTP://PACER.PSC.USCOURTS.GOV.  THE WEBSITE ADDRESS FOR THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS IS: HTTP://WWW.TXSB.USCOURTS.GOV**

## VI.    UNCLASSIFIED CLAIMS

In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims and Priority Tax Claims are not classified under the Plan, and the treatment of those Claims is set forth herein.

### A.    <u>Administrative Claims</u>

As provided under Bankruptcy Code section 1123(a)(1), Administrative Claims are not classified for purposes of voting on, or receiving distributions under, the Plan.  Accordingly, Holders of Administrative Claims are not entitled to vote on this Plan.

1.    **Professional Fee Claims**

<u>Description</u>.  All Professional Fee Claims.  A summary of these claims are as follows:

| Claimant | Estimated Unpaid Fees and Expenses Through ___, 2018 |
|---|---|
| Okin Adams, LLP – Counsel for Debtor Waller Marine, Inc. | $200,000 |
| Stout Risius Ross, LLC – Financial Advisor to the Debtors | $40,000 |
| Anderson Burnside PLLC – Special Litigation Counsel for the Debtors | $30,000 |
| Miller Newlin & Co., P.C. – Accountant for the Debtors | $0.00 |

**Treatment**.  The Professional Fee Claims shall be paid in full on the later of the Effective Date or the date such Professional Fee Claim becomes an Allowed Claim.  The Holders of the Professional Fee Claims shall File and serve an application for final allowance of compensation and reimbursement of expenses no later than forty-five (45) days after the Effective Date.

2.     **U.S. Trustee Quarterly Fees**

**Description.**  The U.S. Trustee Quarterly Fees assessed pursuant to 28 U.S.C. § 1930(a)(6). The following is the estimate of such fees:

| United States Trustee – Quarter Estimate | $10,000 |
| --- | --- |

The Debtor's Bankruptcy Estate shall be responsible for timely payment of the United States Trustee quarterly fees incurred pursuant to § 1930(a)(6) without the need for the Office of the United States Trustee to file any request for payment.  Any such fees due as of the Confirmation Date will be paid in full on the Effective Date of the Plan.  The Reorganized Debtor shall timely pay post-confirmation quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) out of available funds until such time as the Bankruptcy Court enters a final decree closing this Bankruptcy Case, or enters an order either converting this case to a case under chapter 7 or dismissing this case.  After confirmation, the Reorganized Debtor shall file with the Bankruptcy Court and shall transmit to the United States Trustee a true and correct statement of all disbursements made by the Reorganized Debtor for each quarter, or portion thereof that this Bankruptcy Case remains open in a format prescribed by the United States Trustee.

3.     **All Other Administrative Claims**

**Description**.  All Administrative Claims other than Professional Fee Claims and fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930.  All Holders of such Claims must timely File such Claims by the Administrative Claim Bar Date or be forever barred from asserting Administrative Claims against the Debtor and/or sharing in any distribution under the DS/Plan.

**Treatment**.  To the extent such Allowed Administrative Claims have not already been paid, satisfied or otherwise released prior to the Effective Date, and except to the extent that a Holder of an Allowed Administrative Claim agrees to a different treatment, each Holder of an Allowed Administrative Claim shall receive Cash in an amount equal to such Allowed Claim, in full and final satisfaction, settlement and release and in exchange for such Claim, on the later of the Effective Date or the date such Administrative Claim becomes an Allowed Administrative Claim pursuant to a Final Order of the Bankruptcy Court, or as soon thereafter as reasonably practicable.

4.    **Allowed Priority Tax Claims**

**Description**.  The Priority Tax Claims listed on Schedule E of the Debtor's Schedules and/or Filed in the Bankruptcy Case.

**Treatment**.  To the extent that the Holders of Allowed Priority Tax Claims have not already been paid, satisfied or otherwise released prior to the Effective Date, and except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a different treatment, the Holder of such Allowed Priority Tax Claim shall receive on the later of (i) the Effective Date, (ii) the date such Priority Tax Claim becomes an Allowed Claim, or (iii) as soon thereafter as is reasonably practicable, in full and final satisfaction, settlement and release and in exchange for such claim, an amount in Cash equal to the unpaid amount of such Allowed Priority Tax Claim, which may be paid through deferred Cash payments of a value, as of the Effective Date, equal to the Allowed amount of such Claim, over a period ending not later than five years after the Petition Date, and in a manner not less favorable than the most favored General Unsecured Claim provided for by the Plan.

## VII.    CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

All Claims and Interests are placed in the Classes set forth below.  A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim is also placed in a particular Class for the purpose of voting on the Plan and receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled.

A.    **CLASS 1 – Allowed Priority Non-Tax Claims**

**Description**.  Class 1 consists of the Allowed Priority Non-Tax Claims.

**Treatment**.  Each Allowed Priority Non-Tax Claim in this Class shall be paid in full on the later of the Effective Date or the date such Priority Non-Tax Claim becomes an Allowed Claim.

**Voting**.  Class 1 is Unimpaired.  Holders of Class 1 Priority Non-Tax Claims are deemed to have accepted this Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote on the Plan.

B.    **CLASS 2 – Allowed Secured Claims**

1.    Subclass 2A:

**Description**.  Subclass 2A consists of the Secured Claim of Business First Bank described in Table 2 of Article IV, which was asserted in a first lien position on the described collateral pledged by the Debtor.

-21-

**Treatment**.  Except to the extent that the Holder of the Secured Claim of Business First Bank agrees to a different treatment, such Secured Claim shall be paid in full on the later of the Effective Date or the date such Secured Claim becomes an Allowed Claim.  The deficiency amount on account of the Subclass 2A Claim shall be treated as a Class 3 General Unsecured Claim.

**Voting**.  Subclass 2A is Unimpaired.  Holder of Subclass 2A Secured Claim is deemed to have accepted the Plan pursuant to Bankruptcy Code Section 1126(f) and is not entitled to vote on the Plan.

2.      Subclass 2B:

**Description**.  Subclass 2B consists of the Secured Claim of Gelman described in Table 2 of Article IV, asserting a first lien position on the described collateral pledged by the Debtor.

**Treatment**.  The Holder of the Gelman Claim shall receive an unsecured promissory note from the Reorganized Debtor providing the following treatment:

- Amount: $400,000.00.

- Interest rate:  Simple interest at Prime as posted by Bank of America.

- Payment terms:  $100,000 plus accrued interest on the first anniversary of the note's issuance, $100,000 plus accrued interest on the second anniversary of the note's issuance and $200,000 plus accrued interest on the third anniversary of the note's issuance.

**Voting**.  Class 2B is Impaired.  Holders of Class 2B Claims are entitled to vote on the Plan.

3.      Subclass 2C:

**Description**.  Subclass 2C consists of the Secured Claim of Westlex Corporation in Table 2 of Article IV, asserted on the described collateral pledged by the Debtor.

**Treatment**.   Except to the extent that the Holder of the Secured Claim of Westlex Corporation agrees to a different treatment, such Secured Claim shall be paid in full on the later of the Effective Date or the date such Secured Claim becomes an Allowed Claim.

**Voting**.  Subclass 2C is Unimpaired.  Holder of Subclass 2C Secured Claim is deemed to have accepted the Plan pursuant to Bankruptcy Code Section 1126(f) and is not entitled to vote on the Plan.

**C.      CLASS 3 – Allowed General Unsecured Claims of Non-Insiders**

**Description**.  Class 3 consists of the Allowed General Unsecured Claims of Holders who are non-Insiders of the Debtor, including Claims of Holders who are not Insiders of the

Debtor for (i) any deficiency portions of any of Secured Claims and (ii) any Claim arising out of the rejection of executory contracts and unexpired leases, if any.

**Treatment**

On the Effective Date, and except to the extent that a Holder of an Allowed Class 3 Claim agrees to a different treatment, such Holder shall receive, in full and final satisfaction, settlement, release and discharge of, and in exchange for each such Allowed Class 3 Claim, its Pro Rata share in:

1.   Proceeds from the Reorganized Debtor's retained causes of action, if any; and

2.   Fifty-one percent (51%) of the amount of any federal tax that would be owed on the Reorganized Debtor's profits within the next four (4) tax years (*i.e.*, 2018, 2019, 2020 and 2021) (the "***WMI Tax Credit Distributions***") that are actually sheltered by the WMI Tax Credit, not to exceed the full amount of each creditor's Allowed Class 3 Claim.

*I.e.*, for every year until and including 2021 that the Reorganized Debtor reports taxable income to the Internal Revenue Service for operations of the Reorganized Debtor that is "sheltered" by the WMI Tax Credit (the "***WMI Tax Credit Offset***") the Reorganized Debtor shall pay 51% of the WMI Tax Credit Offset, pro rata, to the Holders of Allowed Class 3 Claims.

* Holders of Allowed Class 3 Claims should note that the operation of the WMI Tax Credit Offset does not guarantee that the Cash savings afforded to the Reorganized Debtor by the WMI Tax Credit insures that the Debtor will have retained such Cash, and nothing in this Plan requires the Reorganized Debtor to escrow such Cash during the relevant tax year.  However, subject to the requirements for notices of events of default detailed below in Article IX.B., Holders of Allowed Class 3 Claims retain all rights afforded to them under applicable bankruptcy and non-bankruptcy law.

**Voting**.  Class 3 is Impaired.  Holders of Class 3 Claims are entitled to vote on the Plan.

D.   **CLASS 4 – Allowed General Unsecured Claims of Insiders**

**Description**.  Class 4 consists of the Allowed General Unsecured Claims of Holders who are Insiders of the Debtor, including Claims held by such Insiders for (i) any deficiency portions of any of Secured Claims and (ii) any Claim arising out of the rejection of executory contracts and unexpired leases, if any.

**Treatment**.  Holders of Class 4 Claims shall receive nothing on account of their Class 4 Claim.

**Voting**.  Class 4 is Impaired.  The vote on this Plan by Class 4 is not sought as such vote does not count under section 1129(a)(10) of the Bankruptcy Code.

E.      **CLASS 5 – Allowed Equity Interests**

**Description**.  Class 5 consists of the Allowed Equity Interests in the Debtor.

**Treatment**.  Upon the Effective Date, in exchange for the cancellation of the Waller Administrative Claim, David Waller shall retain 51.0% of his equity in the Reorganized Debtor.

**Voting**.  Class 5 is Unimpaired.  Holders of Class 5 Interests are deemed to accept the Plan under Section 1126(g) of the Bankruptcy Code and not entitled to vote on the Plan.

## VIII.   MEANS FOR EXECUTION OF THE PLAN

A.      **Funding the Plan**

The Plan is a reorganizing plan and shall be funded from (i) prosecution of Retained Causes of Action, (ii) a Cash investment in the amount necessary for the Reorganized Debtor to pay the Allowed Administrative Claims (the "*Cash Investment*") by WMS in exchange for 49.0% of the Equity Interest in the Reorganized Debtor and (iii) a funding commitment by WMS to the Reorganized Debtor to continue business operations.  A copy of the Letter of Intent between WMI and Tiderock is attached hereto as Exhibit 5, and a copy of the assignment of the rights of Tiderock in the LOI to WMS is attached hereto as Exhibit 6.

B.      **Reserves**

As soon as practicable after the Confirmation Date, the Debtor shall establish the Disputed Claims Reserve from unencumbered Cash on hand and/or Other Distributable Proceeds.

C.      **Continued Corporate Existence**

The Debtor will continue to exist after the Effective Date as a corporate entity, with all the powers of a corporation under applicable law and pursuant to its certificate of incorporation and bylaws in effect prior to the Effective Date.

D.      **Officers and Directors of the Reorganized Debtor**

Upon the Effective Date, overall management of WMI shall be retained by David Waller but shall be strengthened by financial, management and marketing personnel nominated by WMS. This may be in the form of directly employed personnel or by a steering committee.  A board of directors shall be formed comprising three (3) Persons made up of one (1) from WMI, one (1) from WMS, and one (1) impartial member as agreed to by WMI and WMS.

## IX.   PROVISIONS GOVERNING DISTRIBUTIONS

A.      **Timing and Calculation of Distributions (other than WMI Tax Credit Distributions):**

As soon as reasonably practicable (as determined by the Debtor) after the Effective Date, the Debtor shall make distributions to Holders of Allowed Claims.  Each Holder of an Allowed Claim shall receive the full amount of the distributions that the Plan provides for in the applicable Class.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article IX.E of the Plan.  Except as otherwise provided in the Plan, Holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

**B.**      **Timing and Calculation of WMI Tax Credit Distributions:**

For tax years 2018 through and including 2021, the Reorganized Debtor shall, within 10 days after the date that the Debtor files its Federal tax return with the Internal Revenue Service, mail a notice (the "**Class 3 Distribution Notice**") to each Holder of an Allowed Class 3 Claim. The Class 3 Distribution Notice shall inform creditors of the Reorganized Debtor's taxable income (if any) and the amount of tax that, but for being sheltered by the WMI Tax Credit, would be payable to the IRS for the relevant tax year.  The notice shall also contain the amount that the Reorganized Debtor is obligated to distribute to Holders of Allowed Class 3 Claims (i.e., 51% of the Tax Credit Offset).

Failure of the Reorganized Debtor to timely send the Class 3 Distribution Notice shall constitute an event of default.

If the Reorganized Debtor is obligated to make a WMI Tax Credit Distribution, the Reorganized Debtor shall do so within 20 days after the date it mails the Class 3 Distribution Notice.

Failure of the Reorganized Debtor to timely make the WMI Tax Credit Distribution as provided herein shall constitute an event of default.

If the event of a default under this provision, any Holder of an Allowed Class 3 Claim may send a written notice of default to the Reorganized Debtor and the Reorganized Debtor shall have 10 days from receipt of such notice to cure the default.  In the event that the Reorganized Debtor fails to cure the default, the creditor shall be entitled to any remedy afforded it under applicable bankruptcy and non-bankruptcy law.

**C.**     **Rights and Powers of the Reorganized Debtor to Make Distributions**

All distributions under the Plan shall be made by the Reorganized Debtor. The Reorganized Debtor shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

The Reorganized Debtor shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; and (c) exercise such powers as may be vested in the Reorganized Debtor by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Reorganized Debtor to be necessary and proper to implement the provisions of the Plan.

**D.**     **Delivery of Distributions and Undeliverable or Unclaimed Distributions**

1.     *Means of Cash Payment*. Payments of Cash to be made by the Reorganized Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

2.     *Delivery of Distributions in General*. Except as otherwise provided herein, the Debtor shall make distributions to Holders of Allowed Claims and Allowed Interests (as applicable) as of the Distribution Record Date at the address for each such Holder as indicated on the Debtor's records as of the date of any such distribution; *provided, however*, that the manner of such distribution shall be determined at the discretion of the Reorganized Debtor; provided further, however, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

3.     *Minimum Distributions*. To the extent Cash is distributed under the Plan, no Cash payment of less than $50.00 shall be made to a Holder of an Allowed Claim on account of such Allowed Claim, and such amounts shall be retained by the Reorganized Debtor.

4.     *Undeliverable Distributions and Unclaimed Property*. In the event that any distribution to any Holder of Allowed Claims or Allowed Interests (as applicable) is returned as undeliverable, no distribution to such Holder shall be made unless and until the Debtor has determined the then-current address of such Holder, at which time such distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtor automatically without the need for a further order by the Bankruptcy Court, and the Claim of any Holder of Claims and Interests to such property shall be discharged and forever barred.

**E.**     **Distributions to Holders of Disputed Claims**

1.     *Objection Deadline*. Unless a different date is set by order of the Bankruptcy Court, all objections to Claims shall be served and filed no later than ninety (90) days after the Effective Date or twenty (20) days after a particular Proof of Claim is Filed,

whichever is later; provided, however that such deadline may be extended pursuant to a motion Filed with the Court by the Debtor.  Any Proof of Claim filed after the Bar Date or for deficiency Claims or rejection Claims, after the deadline for filing such claims set forth in this Plan shall be of no force and effect, shall be deemed disallowed, and will not require objection.  All Disputed Claims shall be litigated to Final Order, *provided, however*, that the Reorganized Debtor may compromise and settle any Disputed Claim by following a Settlement Notice with respect to such settlement in accordance with the procedures described in Article XI of the Plan.

2.  *Responsibility for Objecting to Claims*.   Until the Effective Date, all parties identified by the Bankruptcy Rules may File objections to Claims.  From the Effective Date and beyond, the Reorganized Debtor shall have the exclusive authority to File, settle, compromise, withdraw, or litigate to judgment any objections to Claims, including without limitation, any objections to Claims Filed by the Debtor prior to the Effective Date.

3.  *No Distribution Pending Allowance*.   Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to any Disputed Claim unless and until such contested Claim becomes an Allowed Claim.  The Disputed Claims Reserve shall be maintained until the Disputed Claims have been resolved.

4.  *Administration of Contested Claims*.

(a)  *Disputed Claims Reserve*.  In determining the amount of distributions to be made under the Plan to Holders of Allowed Claims, the appropriate distributions required by the Plan shall be made according to estimates and subject to the provisions of the Plan.  To protect the interests of Holders of Disputed Claims, the Disputed Claims Reserve shall be established on the Effective Date.  The Debtor shall fund the Disputed Claims Reserve with unencumbered Cash and/or Other Distributable Proceeds in an amount that represents the Pro Rata Share of the Cash that would otherwise be distributed to Holders of contested Claims if such Claims were Allowed.

(b)  *Distribution After Allowance*.  As soon as practicable after a Disputed Claim becomes an Allowed Claim, the Holder of an Allowed Claim shall receive a distribution in an amount equal to the aggregate of all the distributions that such Holder would have received had such contested Claim been an Allowed Claim on the Effective Date.  Distributions to each Holder of a contested Claim, to the extent that such Claim becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the Class of Claims to which such Claim belongs.  The Debtor shall have the right to make or direct the making of all interim distributions to the Holders

of Allowed Claims.  No interest shall be paid on account of a Disputed Claim that later becomes an Allowed Claim.

(c) *Distribution After Disallowance*.  If and when a Disputed Claim becomes disallowed, the Pro Rata Share of the distributions to which each Holder is entitled shall increase commensurately.  Accordingly, the Reorganized Debtor, in its sole discretion, shall have the right to make or direct the making of any subsequent distributions.

## X. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

### A. <u>Conditions Precedent to Confirmation</u>

The following are conditions precedent to confirmation of the Plan that shall be satisfied or waived in writing in accordance with Article X.C of the Plan:

1. The Court shall have approved the Combined Disclosure Statement and Plan in a form and substance acceptable to the Debtors; and

2. The Plan and Confirmation Order shall be in form and substance acceptable to the Debtor.

### B. <u>Conditions Precedent to Effectiveness</u>

1. The Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the Debtor and shall not (a) have been reversed or vacated, (b) be subject to a then-effective stay, or (c) have been modified or amended;

2. The Plan, including any amendments, modifications, or supplements thereto, and inclusive of any amendments, modifications, or supplements made after the Confirmation Date but before the Effective Date, shall be in form and substance acceptable to the Debtor;

3. The Debtor shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan; and

4. The sale of the 49% of the Interests in the Debtor to WMS shall have closed and the Debtor and David Waller shall have received the Cash Investment necessary to pay their respective administrative claims.

### C. <u>Waiver of Conditions</u>

The conditions to Confirmation and the Effective Date set forth in this Article may be waived only with the prior written consent of the Debtor without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

### D. <u>Effect of Failure of Conditions</u>

If Consummation does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall: (1) constitute a waiver or release of Claims by the Debtor; (2) prejudice

in any manner the rights of the Debtor, any Holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgement, offer, or undertaking by the Debtor, any Holders of Claims or Interests, or any other Entity.

## XI.   PRESERVATION OF RETAINED CAUSES OF ACTION AND VESTING

### A.   <u>Vesting</u>

The Bankruptcy Estate shall remain open after Confirmation of the Plan (a) to permit the Debtor to prosecute any Retained Causes of Action, including Avoidance Actions and other lawsuits of the Bankruptcy Estate, to final conclusion, (b) to permit the Debtor to prosecute to conclusion all Claims objections, and (c) to make final distributions to all Holders of Allowed Claims and Interests as provided for in this Plan, including the U.S. Trustee fees through the closing of the case.

### B.   <u>Retention and Enforcement of Causes of Action</u>

Except as otherwise provided in the Plan, all Causes of Action that the Debtor and its Estate may hold against any Person or Entity shall be retained by the Debtor's Bankruptcy Estate among the Retained Causes of Action and shall be investigated and may be prosecuted by the Reorganized Debtor after the Effective Date. The Court shall have the jurisdiction to hear such Retained Causes of Action. Any Holder of a Claim or Interest that is subject to an Avoidance Action may have an Unsecured Claim if and to the extent any transfer is returned to the Debtor's Bankruptcy Estate.

The investigation into the Retained Causes of Action has not been completed. Accordingly, notice is hereby given that any and all Retained Causes of Action that may exist against any Person or Entity may be pursued by the Debtor, regardless of whether, or the manner in which, such Retained Causes of Action are identified in the DS/Plan. The failure to identify a Retained Cause of Action in the DS/Plan shall not constitute a waiver or release of any such Retained Cause of Action.

For the avoidance of doubt, WMI will prosecute the Retained Causes of Action for the benefit of Holders of Claims and Interests, including, without limitation, the following Retained Causes of Action:

1.   All Causes of Action, counterclaims, and defenses held by the Debtor or its Estate as of the Effective Date, whether or not previously asserted, are preserved under the Plan for the benefit of the Debtor's Estate. The Debtor expressly reserves all rights to supplement at any time the Retained Causes of Action, counterclaims, and defenses, including, without limitation, those described hereinafter, whether based on the results of prior, ongoing, or future investigations or otherwise.

2.   All Claims, counterclaims, defenses, and Causes of Action referenced in the Plan.

3.   All other counterclaims and defenses, including, without limitation, rights of setoff and recoupment, and all defenses of the estate under 11 U.S.C. § 558.

4.   All Claims and Causes of Action asserting alter ego, corporate veil piercing, or reverse veil piercing.

5.   All Claims and Causes of Action alleging generalized harm to the Estate, as referred to in judicial precedents such as *Schimmelpenninck v. Byrne (In re Schimmelpenninck),* 183 F.3d 347 (5th Cir. 1999).

6.   All Claims and Causes of Action asserting equitable, declaratory, or injunctive relief.

7.   All Claims, counterclaims, defenses, and Causes of Action for, without limitation, Avoidance Actions, commercial torts, tortious interference with contractual or business relations, unfair competition, breach of contract, accounts, accounts receivable, unjust enrichment, money had and received, embezzlement, loss of income, setoff, recoupment, fraud, fraudulent inducement, misrepresentation, fraudulent or negligent omission, fraudulent or preferential transfers arising other than under the Bankruptcy Code, conversion, replevin, lender liability, recharacterization of debt as equity, equitable subordination, challenges as to the extent, priority and validity of any purported Claims, Liens and/or security interests, injury to property and/or title to property, negligence, gross negligence, recklessness, willful misconduct, conspiracy, aiding and abetting, breach of fiduciary duty, breach of confidential relationship, mismanagement, violation of securities laws, self-dealing, usurpation of corporate opportunity, insolvent trading, breach of duty of loyalty, allowing, authorizing and/or receiving unlawful or improper distributions, unreasonable related party transactions, uncommercial transactions, improper redemption of equity interests, breach of duty of good faith, breach of duty to provide information, breach of duties of care and/or diligence, failure to make informed decisions, improper use of information to gain improper advantage, and actions seeking affirmative recoveries, and other, similarly grounded Claims, counterclaims, defenses, and Causes of Action against, without limitation, current and/or former shareholders, members, equity interest Holders, debt Holders, partners, prospective joint venture participants, joint venture participants, prospective contracting parties, contracting parties, account debtors, prospective purchasers, purchasers, prospective sellers, sellers, directors, officers, managers, employees, agents, lenders, contractors, insurers, sureties, investment bankers, consultants, advisors, representatives, competitors, vendors, and other creditors of the Debtor and/or entities affiliated with or otherwise related to any of the foregoing.

8.   All Claims, counterclaims, defenses, and Causes of Action against any and all former managers, officers, directors or employees of the Debtor including, but not limited to, avoidance actions, commercial torts, tortious interference with contractual or business relations, unfair competition, breach of contract, accounts, accounts receivable, unjust enrichment, money had and received, embezzlement, loss of income, setoff, recoupment, fraud, fraudulent inducement, misrepresentation, fraudulent or negligent omission, fraudulent or preferential transfers arising other than under the Bankruptcy Code, conversion, replevin, lender liability, recharacterization of debt as equity, equitable subordination, challenges as to the extent, priority and validity of any purported claims, liens and/or security interests, injury to property and/or title to property, negligence, gross negligence, recklessness, willful misconduct, conspiracy, aiding and abetting, breach of fiduciary duty, breach of confidential relationship, mismanagement, violation of securities laws, self-dealing, usurpation of corporate opportunity, insolvent trading, breach of duty of loyalty, allowing, authorizing and/or receiving unlawful or

-30-

improper distributions, unreasonable related party transactions, uncommercial transactions, improper redemption of equity interests, breach of duty of good faith, breach of duty to provide information, breach of duties of care and/or diligence, failure to make informed decisions, improper use of information to gain improper advantage, and actions seeking affirmative recoveries, and other, similarly grounded Claims, counterclaims, defenses, and Causes of Action.

Any and all Retained Causes of Action shall survive entry of the Confirmation Order for the benefit of the Debtor's Bankruptcy Estate.

9.   The Debtor retains any right to bring a cause of action against William Ralph Hutchins ("*Hutchins*") associated with that certain "Inventor Compensation Agreement" between the Debtor and Hutchins executed by the Debtor on December 16, 2015, under any cause of action, including but not limited to Section 548 of the bankruptcy code.

C.   <u>**Prosecution and Settlement of Retained Causes of Action and Objections to Claims**</u>

After the Confirmation Date, the Reorganized Debtor shall be authorized to commence or continue any suit or other proceeding for the enforcement of any Retained Cause of Action which the Debtor had or had power to assert immediately prior to the Effective Date. The Reorganized Debtor may also, pursuant to Bankruptcy Rule 9019 and section 105(a) of the Bankruptcy Code, settle and compromise any and all Retained Causes of Action and any objections to Claims, in accordance with the following procedures, which shall constitute sufficient notice in accordance with the Bankruptcy Code and the Bankruptcy Rules for compromises and settlements: (i) if the resulting settlement provides for settlement of a Retained Cause of Action or objection to a Claim originally asserted in an amount equal to or less than $50,000.00, then the Reorganized Debtor may settle the Retained Cause of Action or objection to Claim and execute necessary documents, including a stipulation of settlement or release; and (ii) if the resulting settlement involves a Retained Cause of Action or objection to a Claim originally asserted in an amount exceeding $50,000.00, then the Reorganized Debtor shall be authorized and empowered to settle such Retained Claim or objection to Claim only upon Bankruptcy Court approval in accordance with Bankruptcy Rule 9019 and by filing a notice of settlement (a "*Settlement Notice*"). The Debtor shall serve a copy of the Settlement Notice on the twenty largest Unsecured Creditors and any parties requesting notice in the Debtor's Bankruptcy case by email. If no party files an objection to the Settlement Notice within ten (10) days after the Settlement Notice is filed, the proposed settlement shall be deemed approved without further order of the Court. If an objection to the Settlement Notice is timely filed, the Reorganized Debtor shall set the matter for hearing and seek Bankruptcy Court approval of the proposed settlement.

## XII.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Under § 365, the Debtor has the right, subject to Bankruptcy Court approval, to assume or reject any executory contracts or unexpired leases. If the Debtor rejects an executory contract or unexpired lease that was entered into before the Filing Date, it will be treated as if it had been breached on the date immediately preceding the Filing Date, and the other party to the agreement may assert a General Unsecured Claim in Class 3 (or Class 4 if the claimant is an Insider) for

damages incurred as a result of the rejection.  In the case of rejection of employment agreements and real property leases, damages are subject to certain limitations imposed by applicable sections of the Bankruptcy Code.  The Debtor intends to assume all contracts unless specifically included in the Schedule of Rejected Contracts attached hereto as Exhibit 4.

The Plan constitutes a motion to reject any executory contracts to which the Debtor is a party listed on the Schedule of Rejected Contracts and not otherwise assumed or subject to a pending assumption motion or rejected pursuant to a Final Order.  If the rejection by the Debtor pursuant to the Plan or otherwise of an executory contract or unexpired lease results in a Claim that is not theretofore evidenced by a timely Proof of Claim, then such Claim will be forever barred and unenforceable against the Debtor's Bankruptcy Estate, unless a Proof of Claim is Filed with the Clerk of the Court and served on counsel for the Proponent within thirty (30) days after entry the Confirmation Order.

## XIII.   MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### A.        Modifications and Amendments

Except as otherwise specifically provided in the Plan, the Debtor reserves the right to modify the Plan whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to those restrictions on modifications set forth in the Plan and the requirements of section 1127 of the Bankruptcy Code, Rule 3019 of the Federal Rules of Bankruptcy Procedure, and, to the extent applicable, sections 1122, 1123 and 1125 of the Bankruptcy Code, the Debtor expressly reserves its respective rights to revoke or withdraw, or, to alter, amend, or modify the Plan one or more times after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Combined Plan and Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

### B.        Effect of Confirmation on Modifications

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to Bankruptcy Code section 1127(a) and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

### C.        Revocation or Withdrawal of Plan

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization.  If the Debtor revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts and Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b)

prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

## XIV.   RETENTION OF JURISDICTION

Under 11 U.S.C. §§ 105(a) and 1142, and notwithstanding entry of the Confirmation Order and passage of the Consummation Date, the Court shall retain jurisdiction over all matters arising out of, and related to, the Bankruptcy Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

1.  Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any requests for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.  Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.  Resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which either Debtor is party or with respect to which either Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to this Plan, the Schedules of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and

(d) any dispute regarding whether a contract or lease is or was executory or expired;

4. Ensure that distributions to Holders of Allowed Claims and Allowed Interests (as applicable) are accomplished pursuant to the provisions of the Plan;

5. Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving either Debtor that may be pending on the Effective Date;

6. Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7. Enter and implement such orders as may be necessary to execute implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

8. Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9. Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10. Issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of the Plan;

11. Resolve any cases, controversies, suits, disputes or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article XV hereof and enter such orders as may be necessary to implement such releases, injunctions and other provisions;

12. Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to the Plan;

13. Enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14. Determine any other matters that may arise in connection with or relate to the Combined DS/Plan, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Combined DS/Plan;

15. Enter an order concluding or closing the Bankruptcy Case;

16. Adjudicate any and all disputes arising from or relating to distributions under the Plan;

17. Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Court order, including the Confirmation Order;

18. Determine requests for the payment of Claims and Interest entitled to priority pursuant to section 507 of the Bankruptcy Code;

19. Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20. Hear and determine matters concerning state, local, and federal taxes in accordance with sections 363, 505, and 1146 of the Bankruptcy Code;

21. Hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions and releases granted in the Plan, regardless of whether such termination occurred prior to or after the Effective Date;

22. Enforce all orders previously entered by the Court; and

23. Hear any other matter not inconsistent with the Bankruptcy Code.

## XV.    EFFECTS OF CONFIRMATION

### A.    <u>**Binding Effect**</u>

The Plan shall be binding upon all Holders of Claims and Interests and their respective successors and assigns.

### B.    <u>**Exculpation and Limitation of Liability**</u>

1.    Neither the Debtor's Bankruptcy Estate nor the Debtor will have or incur any liability to any Holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the solicitation of votes to accept the Plan, the Debtor's Bankruptcy Case, the pursuit of Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their fraud, gross negligence, or willful misconduct or as provided by the Plan, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

2.    No Holder of a Claim or Interest, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, will have any right of action against the Debtor's Bankruptcy Estate, or the Debtor for any act or omission in connection with, relating to, or arising out of the solicitation of votes to accept the Plan, or the pursuit of Confirmation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except as provided by the Plan or by law.

# XVI.   MISCELLANEOUS PROVISIONS

**A.**      **Severability of Plan Provisions**

If, prior to Confirmation, any term or provision of the Plan is held by the Court to be invalid, void or unenforceable, the Court, at the request of a party in interest, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may be altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**B.**      **Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**C.**      **Consummation of Plan**

The Confirmation Order shall include (a) a finding by the Bankruptcy Court that FED. R. CIV. P. 62(a) shall not apply to the Confirmation Order; and (b) the Bankruptcy Court's authorization for the Proponent to consummate the Plan immediately after entry of the Confirmation Order.

**D.**      **Governing Law**

Unless a rule of law or procedure is supplied by federal law, including the Bankruptcy Code and Bankruptcy Rules, (i) the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, and (ii) corporate governance matters shall be governed by the laws of the state of incorporation, without giving effect to the principles of conflicts of law thereof.

# XVII.  VOTING ON AND CONFIRMATION OF THE PLAN

**A.**      **Voting Procedures and Requirements**

The Proponent is providing copies of this Combined Disclosure Statement and Plan and Ballots to all known Holders of Claims in the Voting Class.

Pursuant to the provisions of the Bankruptcy Code, only Classes of Claims against the Debtor that are "Impaired" under the terms and provisions of the Plan and entitled to receive a distribution thereunder are entitled to vote to accept or reject the Plan.  Accordingly, Classes of

Claims or Interests that are not Impaired under the terms and provision of the Plan are *not* entitled to vote on the Plan. In addition, Classes of Claims or Interests that are not entitled to a distribution under the terms and provisions of the Plan are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

Under the Plan, Holders of Claims in Class 2B and Class 3 are Impaired. Class 2B and Class 3 are entitled to vote. Class 4 and 5's vote are not counted. Classes 1, 2A and 2C are not Impaired and are deemed to have accepted the Plan. The following voting procedures (the "***Voting Procedures***") have been established with respect to the amount and classification of Claims and Interests, and the determination of the validity of Ballots submitted, for voting purposes:

1. Unless otherwise provided below, a Claim will be deemed temporarily Allowed for voting purposes in an amount equal to (i) if a Proof of Claim has not been timely Filed, the amount of such Claim as set forth in the Schedules of assets and liabilities, Filed by the Debtor or (ii) the amount of such Claim as set forth in a timely Filed Proof of Claim.

2. If a Claim is deemed Allowed in accordance with the Plan, such claim will be allowed for voting purposes in the deemed Allowed amount set forth in the Plan.

3. If a Claim has been estimated or otherwise Allowed for voting purposes by order of the Court, such claim will be temporarily Allowed for voting purposes in the amount so estimated or allowed by the Court.

4. Ballots that are otherwise validly executed but do not indicate either acceptance or rejection of the Plan will not be counted.

5. Only Ballots that are timely received with signatures will be counted. Unsigned ballots will not be counted.

6. Ballots postmarked prior to the Voting Deadline, but received after the Voting Deadline, will be counted.

7. Ballots that are illegible, or contain insufficient information to permit the identification of the Holder, will not be counted.

8. If a Holder simultaneously casts inconsistent duplicate Ballots, with respect to the same Claim, such Ballots shall not be counted.

9. Unless otherwise ordered by the Bankruptcy Court, questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots shall be determined by the Bankruptcy Court at the Confirmation Hearing.

**IN ORDER TO BE COUNTED, EXCEPT TO THE EXTENT THE DEBTOR SO DETERMINES OR AS PERMITTED BY THE BANKRUPTCY COURT PURSUANT TO BANKRUPTCY RULE 3018, BALLOTS MUST BE SIGNED AND RETURNED SO THAT THEY ARE RECEIVED NO LATER THAN 5:00 P.M., ON _____, 2018 AT THE FOLLOWING ADDRESS:**

OKIN ADAMS LLP
Attn:  Christopher Adams
Email: cadams@okinadams.com
1113 Vine St., Suite 201
Houston, Texas  77002
Tel: (713) 228-4100
Fax: (888) 865-2118
COUNSEL FOR THE DEBTOR

**BALLOTS WILL BE ACCEPTED BY REGULAR MAIL, FACSIMILE OR EMAIL**

As mentioned above, if the Ballot is not signed and returned as described, it will not be counted.  If the Ballot is damaged or lost, or if you do not receive a Ballot, you may request a replacement by addressing a written request to Debtor's counsel at the above address by regular mail, facsimile or email.  Please follow the directions contained on the Ballot carefully.

The process of soliciting acceptance of the Plan must be fair and open without outside influence in the form of representations, inducements or duress of any kind.  To the extent that you believe solicitation of your vote from any party is being sought outside of the judicially-approved and statutorily-defined disclosure requirements and voting procedures, please contact counsel for the Debtor.

**B.      Acceptance By All Impaired Classes**

Acceptance of the Plan requires that each Impaired Class of Claims or Interests (as classified therein) accepts the Plan, with certain exceptions hereinafter discussed below.  Thus, acceptance of the Plan requires acceptance by each of the Impaired Classes.

Classes of Claims and Interests that are Unimpaired under the Plan are deemed to have accepted the Plan.  Acceptances of the Plan are being solicited only from those Persons who hold Claims or Interests in the Voting Class.

The Bankruptcy Code defines acceptance of the Plan by a Class of Claims as acceptance by the Holders of at least two-thirds (2/3) in dollar amount and a majority in number of Claims of that Class, but for that purpose, only those Claims, the Holders of which actually vote to accept or reject the Plan, are counted.

An Impaired Class of Claims shall have accepted the Plan if (i) the Holders (other than any Holder designated under § 1126(e)) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan; and (ii) the Holders (other than any Holder designated under § 1126(e)) of more than one half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.  A Class is deemed not to have accepted the Plan if the Plan provides that the Claims or Interests of such Class do not entitle the Holders of Claims or Interests in such Class to receive or retain any property under the Plan on account of such Claim or Interest.

**C.**     **Confirmation of the Plan**

To confirm the Plan, § 1129 requires the Bankruptcy Court to make a series of determinations concerning the Plan, including, without limitation: (i) that the Plan has classified Claims and Interests in a permissible manner; (ii) that the contents of the Plan complies with the technical requirements of the Bankruptcy Code; (iii) that the Debtor has proposed the Plan in good faith; and (iv) that the Debtor has made disclosures concerning the Plan which are adequate and include information concerning all payments made or promised in connection with the Plan and the Debtor's Bankruptcy Case.  The Debtor believes that all of these conditions have been or will be met with respect to the Plan.

The Bankruptcy Code requires that, unless the 'cramdown' provisions of the Bankruptcy Code (as discussed below) are utilized, as a condition precedent to Confirmation, the Plan must be accepted by the requisite votes of each Voting Class.  Therefore, the Bankruptcy Court must find, in order to confirm the Plan, that the Plan has been duly accepted.  In addition, the Bankruptcy Court must find that the Plan is feasible and that the Plan is in the "best interests" of all Holders of Claims and Interests.  Thus, even if Holders of Claims were to accept the Plan by the requisite number of votes, the Bankruptcy Court is still required to make independent findings respecting the Plan's feasibility and whether the Plan is in the best interests of Holders of Claims and Interests before it can confirm the Plan.

**D.**     **The Best Interest Test**

Whether or not the Plan is accepted by each Voting Class, in order to confirm the Plan the Bankruptcy Court must independently determine, pursuant to § 1129(a)(7), that the Plan is in the best interests of each Holder of a Claim or Interest that has not voted to accept the Plan.  This requirement is satisfied if the Plan provides each non-accepting Holder of a Claim or Interest in such Voting Class a recovery on account of such Holder's Claim or Interest that has a value, as of the Effective Date, at least equal to the value of the distribution each such Holder would receive in a liquidation of the Debtor under Chapter 7 of the Bankruptcy Code.  This requirement is commonly referred to as the "Best Interests of Creditors Test." This Plan satisfies the test.

Indeed, the Plan provides the possibility for a greater recovery to Holders of Claims and Interests than would be received under a liquidation pursuant to Chapter 7 of the Bankruptcy Code.  The Reorganized Debtor will be able to pursue any Retained Causes of Action, including Avoidance Actions, and the collection of any accounts in a cost-effective manner, while in a liquidation the Debtor's Estate would be burdened with an additional layer of administrative expense associated with the appointment of a chapter 7 trustee, and retention of professionals attendant thereto. The Plan, in essence, increases the efficiency of administrating the Debtor's assets for the benefit Holders of Claims and Interests.

Moreover, in chapter 7 cases, the chapter 7 trustee would also be entitled to seek a sliding scale commission based upon the funds distributed by such trustee, even though the Debtor has already incurred many of the expenses associated with the foregoing.  Accordingly, the Proponent believes that there is a reasonable likelihood in a chapter 7 scenario that Holders of Allowed Claims would have to pay doubly for the funds accumulated in the Estate, since the chapter 7 trustee would be entitled to receive a commission in some amount for all funds distributed.

It is also anticipated that a chapter 7 liquidation would result in delay in the distributions to Holders of Allowed Claims. Among other things, a chapter 7 case would trigger a new bar date for filing Claims that would be more than ninety (90) days following conversion of the case to chapter 7. Thus, a chapter 7 liquidation would not only delay distributions, but raise the prospect of additional Claims that were not asserted in the Bankruptcy Case.

In short, the Plan presents a superior alternative to a chapter 7 liquidation. The potential recovery to Holders of Claims and Interests under the Plan is not expected to be less than what could be obtained in a hypothetical chapter 7 liquidation. The analysis outlined above and the circumstances of the case leads the Proponent to believe that the recovery in a chapter 7 scenario might be limited to the funds from those available in the Estate as of the date of the Combined DS/Plan. For additional information, see the Liquidation Analysis attached as **Exhibit 2** to this Combined Plan/DS.

## E.     Feasibility

A plan may be confirmed only if it is not likely to be followed by the liquidation or the need for further financial reorganization of a debtor. The Debtor believes that it will be able to perform its obligations under the Plan without further financial reorganization.

The Debtor's Plan of reorganization shall be sufficiently funded by an investor, Sampson, in exchange for equity and debt in WMI. Specifically, Sampson will be providing sufficient funds to permit payment to Holders of Allowed Administrative Claims and Allowed Secured Clams. The Debtor will use the Cash Pool to make distributions under the Plan. Accordingly, the Debtor's Plan is feasible, and is not likely to lead to further reorganization of the Debtor.

## XVIII.     DISCLAIMERS

## A.     Proponent Has No Duty to Update

The statements contained in this Combined Disclosure Statement and Plan are made by the Debtor as of the date hereof, unless otherwise specified herein, and the delivery of this Combined Disclosure Statement and Plan after that date does not imply that there has been no change in the information set forth herein since that date. The Proponent has no duty to update this Disclosure Statement and Plan unless otherwise ordered to do so by the Bankruptcy Court.

## B.     Source of Information

Counsel for Debtor has relied upon information provided by the Debtor in connection with the preparation of this Combined Disclosure Statement and Plan. Although counsel has performed certain limited due diligence in connection with preparing this Combined Disclosure Statement and Plan, no independent verification of the information contained herein has been performed.

## C.     No Legal or Tax Advice Provided

The contents of this Combined Disclosure Statement and Plan should not be construed as legal, business or tax advice.  Each Holder of a Claim or Interest should consult their own legal counsel and accountant as to the legal and tax implications of this Plan and other matters concerning the Claim or Interest.  This Combined Disclosure Statement and Plan may not be relied upon for any purpose other than to determine how to vote on the Plan or object to Confirmation of the Plan.

**D.** **No Admission Made**

Nothing contained herein shall constitute an admission of any fact or liability by any party (including, without limitation, the Proponent) or be deemed evidence of the tax or other legal effects of the Plan on the Proponent or on Holders of Claims or Interests.

**E.** **No Regulatory Agency Approval**

No governmental or other regulatory agency approvals have been obtained as of the date of the mailing of the Combined Disclosure Statement and Plan.

## XIX.   CONCLUSION AND RECOMMENDATION

The Proponent believes that Confirmation of the Plan is desirable and in the best interests of all Holders of Claims and Interests.  The Proponent therefore urges you to vote to accept the Plan and to evidence such acceptance by returning the Ballot(s) so they will be received by the Voting Deadline.

Dated: November 19, 2018.

**OKIN ADAMS LLP**

By:  _/s/ Christopher Adams_
Christopher Adams
Texas Bar No. 24009857
cadams@okinadams.com
Ryan A. O'Connor
Texas Bar No. 24098190
roconnor@okinadams.com
1113 Vine St., Suite 201
Houston, Texas 77002
Tel: (713) 228-4100
Fax: (888) 865-2118

**ATTORNEYS FOR DEBTOR
WALLER MARINE, INC.**